153 So. 225

**COTTON et al. v. FIRST NAT. BANK OF OPP.**

4 Div. 709.

Supreme Court of Alabama.

Jan. 18, 1934.

Rehearing Denied March 22, 1934.

C. B. Fuller, of Andalusia, for appellants.

312

E. O. Baldwin, of Andalusia, and Frank J. Mizell, Jr., of Florala, for appellee.

BROWN, Justice.

The appeal is from a final decree allowing the complainants to exercise the statutory right of redemption of 490 acres of farm lands, including the homestead of the mortgagor, sold under the power of sale embodied in a mortgage purporting to have been executed by M. E. Cotton and his wife on the 6th day of December, 1926, to the defendant, the First National Bank of Opp, to secure an indebtedness of $4,561.57, evidenced by a promissory note of the same date, and due and payable on January 1, 1927, together with any additional amounts furnished the mortgagor "on any account and at any time." The note and mortgage were silent as to interest on the indebtedness.

In addition to the land, the mortgage covered "all household and kitchen furniture, all crops of every description raised or caused to be raised by me [the mortgagor] or under my direction during the years 1926, 1927 and 1928, in Covington County, Alabama; all my farming tools and implements; all my live stock, personal property and choses in action, not herein otherwise named; all rents or advances due or to become due to me as landlord from any tenant in said county or elsewhere, for 1926, 1927, 1928, and the following additional property: One black mare mule 9 years old; one mouse colored mare mule.

9 years old, one bay horse mule 10 years old, two two-horse wagons and harness, one red pied milch cow and calf, 32 head of stock hogs; also all of our farming tools and implements; one mouse colored mule 4 years old; one hickory one-horse wagon and harness." Also a note, secured by a mortgage executed by one Alpha Johns to the mortgagee for $6,016. The mortgage recites: "This mortgage is given in extension of and to better secure all prior notes and mortgages given by us to said bank."

In addition to the security afforded by the property covered by the mortgage, the mortgagor had assigned to the mortgagee a policy of life insurance on the mortgagor's life for $5,000.

The power of sale is in the following language: "But if the said indebtedness, or any installment thereof is not paid at maturity, then the entire debt secured hereby shall become due and payable; and in such case, the mortgagee is authorized to seize the personal property herein conveyed and to sell the same either at public or private sale, and with or without notice, as may be determined upon; and the said mortgagee is authorized in such case to sell the real estate conveyed herein by giving notice of said sale by posting in three public places in the town of Opp, Covington County, Alabama, for a period of five (5) days *which sale shall take place at any public place in the town of Opp, Covington County, Alabama, and shall be for cash.*" (Italics supplied.)

On January 21, 1928, the defendant acting by its cashier, prepared a writing, in the form of a letter, to which it procured the signatures of some of the complainants, including Mrs. Cotton, two of her sons and a daughter, in words and figures, following:

"*In re Mortgage Indebtedness of M. E. Cotton.*

"We wish to acknowledge *the mental incompetency* of M. E. Cotton at the present time, and further, to acknowledge that we have examined carefully the status and amount of his indebtedness to you at this time, and that we find $5321.79 to be the correct balance due at this time.

"Because of the mental incapacity of M. E. Cotton at the present time to attend to his business, we wish to request an extension of this indebtedness until fall—October 1st, 1928—and consent for you to add lawful interest thereto, and also any other lawful charges by the payment of any lien which would supersede your security. We have par-

ticular reference to taxes, and instalment to the Federal Land Bank of New Orleans, La." (Italics supplied.)

This paper was witnessed by H. L. Cummins, notary public, and Lillian McDavid, and a notarial seal affixed thereto.

The mortgage, the foreclosure of which is in question, purports to have been signed by the mortgagor and his wife making their marks, witnessed by two witnesses, and also acknowledged before a notary, and is a junior mortgage, subordinate to one held by the Federal Land Bank; the indebtedness secured thereby, as complainants contend, being, in round numbers, $7,000.

On August 15, 1928, the defendant, after posting notices of the time, place, and terms of sale—one "on the telephone post at the intersection of Hart Avenue and Main Street, one on the telephone post in front of Jacob's Drug Company at the corner of North Railroad Avenue and Main Street, and the other on a telephone post near the store of Benton Mercantile Company, all in the town of Opp"—foreclosed the mortgage and bid in the property for itself for the sum of $500, and for this foreclosure it charged on the mortgagor's account $655.93 as attorney's fee, computing the attorney's fee, not on the price at which the property was sold, but on the alleged balance due on the mortgage debt, $6,559.30, increasing the alleged balance to $7,215.24. The amount of the bid, so far as appears, was not even credited on the mortgage debt.

The evidence shows that the mortgagor died on Thanksgiving Day 1928, and the defendant collected $5,000 on the life insurance policy, out of which the defendant paid the expenses of his burial, amounting to $187.85, leaving a balance of $4,812.15, which, with certain payments made by Mrs. Cotton, amounting to $90, was applied in reduction of the alleged indebtedness of $7,215.24, reducing the amount to $2,313.09. To this amount was added what is termed in the statement of account, "Lawful charges against above indebtedness since 8–15–28," involving numerous items, including interest at 10 per cent. per annum, charged on January 15, 1930, from January 15, 1929, and again from January 15, 1930, to August 15, 1930—bringing the alleged total indebtedness up to $5,830.60.

The decree of the circuit court ascertains the last stated amount ($5,830.60) as the correct amount due, and requires the complainants to pay said sum, with the costs of the

suit, into the registry of the court as a condition upon which complainants may redeem.

On February 13, 1928, by arrangement with the Federal Land Bank, brought about by Mr. Mizell, the president of the mortgagee bank—for at this time Cotton, the mortgagor, was confessedly a non compos mentis —a part of the debt due the mortgagor from Johns was credited on the Federal Land Bank mortgage, and the defendant took a mortgage to itself for $1,883.22 from Johns, and which, according to Mizell, the defendant bank held as collateral "to the mortgage of M. E. Cotton on the 489 acres of land." Thereafter, on the 18th of December, the defendant procured from Johns a deed to the land covered by the last above mentioned mortgage, in lieu of foreclosure, and the evidence goes to show that the value of said land was approximately $4,000. The mortgage debt of Cotton was in no way credited with the $1,883.22 and interest thereon.

The evidence shows that both the mortgagor and his wife were illiterate, unable to read or write; that the mortgagor during the time of the transactions was a paralytic; that the mortgage of 1926, here involved, was one of several overlapping mortgages, taken for money advanced in which interest was computed and added to the indebtedness secured, without any provision in the paper as to the rate, and that 8 per cent. or more was exacted without regard to time; that the mortgagor kept no account, but relied upon the defendant bank and its officers to keep the account, and that in their dealings through several years a relation of trust and confidence, if not in law, in fact, existed between the parties; that some, if not all, of the transactions between the parties were tainted with usury, and this was carried into and increased the debt secured by the mortgage, rendering it usurious and void as to the interest. The dealing in respect to the sale of fertilizer is clearly within the influence of the decisions of this court. Davis et al. v. Elba Bank & Trust Co. et al., 216 Ala. 632, 114 So. 211; Elba Bank & Trust Co. v. Davis et al., 212 Ala. 176, 102 So. 117; Sewell v. Nolen Bank et al., 204 Ala. 93, 85 So. 375; Blue v. First Nat. Bank of Elba, 200 Ala. 129, 75 So. 577.

█ Another matter to be noted is that debts for advances to others than Cotton, the mortgagor, and for which he was only liable as surety, were charged on the mortgage debt, and these were clearly not within the blanket provision of the mortgage —"together with any additional amounts *furnished me* by the mortgagee on any account and at any time before the debt herein is fully paid, in money or otherwise." (Italics supplied.)

Now to state, in short, the nature of the case as appears from the averments of the original bill and its amendments, so far as material to the questions presented by the appeal.

The original bill was filed by Mrs. A. E. Cotton, the widow of the deceased mortgagor, against the defendant bank, alleging there was but a small balance due on the mortgage debt at the time of the foreclosure under the power of sale. "That before the said land was sold the respondent entered into an agreement with the complainant whereby the respondent was to foreclose its mortgage and purchase the land for the complainant, advancing the purchase price at a sum equal to the balance due on said mortgage, the complainant's husband then being physically and mentally incompetent of transacting business and looking after said farm, and complainant did not know until a very short time ago that said transaction was not handled in that way and the land purchased in her name at foreclosure sale; that under said agreement she was to have the rent to pay the balance due on said mortgage, if any, and have title to the property." That the statement of account furnished by defendant on her demand was incorrect; that it had failed to give her credit for $1,500 worth of property taken under said mortgage, and for rents collected before foreclosure; avers her readiness, ability, and willingness to pay any amount found to be due, and prayed for an accounting and asserted the right to redeem.

The bill was several times amended; one of the amendments joining some of the heirs of the deceased mortgagor as parties complainant. The defendant interposed demurrers to the bill, after some of the amendments, and some of the demurrers were sustained, to one or more of its aspects.

Finally, the bill was amended by filing an "Amended or substituted bill of complaint," which, in its opening paragraph, states: "Comes the complainants, leave of the Court having been first had and obtained to amend, and amend their Bill of Complaint to meet the proof in said cause, by substituting the following amended Bill of Complaint, and further amend by adding the following parties as complainants: Mrs. A. E. Cotton, as

.Administratrix of the Estate of M. E. Cotton, deceased," and all the other heirs at law of the deceased mortgagor, naming them.

While a motion to strike the substituted bill and demurrers thereto was filed, no ruling of 'the court was invoked thereon.

█ The foregoing statement of the course of pleading is sufficient to indicate that the suggestion of appellee that the sole complainant in the original bill, Mrs. A. E. Cotton, as an individual, is not a party complainant to ;the substituted bill, and its allowance and filing worked an entire change of parties, is without merit. Moseley v. Ritter et al., 226 .Ala. 673, 148 So. 139; Birmingham Gas Co. v. Sanford et ux., 226 Ala. 129, 145 So. 485.

Moreover, the defendant has not appealed from the decree, nor has it made a cross-assignment of errors on the complainants' appeal. Code 1923, § 6091.

█ The substituted bill is not in any sense a bill to enforce the statutory right of redemption, but certainly, in the absence of demurrer duly filed and insisted upon, its averments present a case for accounting, discovery, and relief from the alleged irregular and oppressive foreclosure of the mortgage, and for such incidental relief as the facts and circumstances may warrant. Williams v. Noland, 205 Ala. 63, 87 So. 818; Elba Bank & Trust Co. v. Davis et al., supra; Moseley v. Ritter, supra.

One of the litigated issues presented by the pleadings, on which much testimony was taken, was as to the mental and physical ability of M. E. Cotton to efficaciously execute the mortgage. The contention of the complainants was and is that he was both physically and mentally incapacitated; that the cashier of the bank made the mark which allegedly constituted his (Cotton's) signature, placing the pen in his paralyzed hand and lifting the arm which was also paralyzed and made the mark; that Cotton was then unable to speak or request such action on the part of the cashier; and testimony going to support this contention is found in the record. However, there was some countervailing evidence, and, as we view the case, it is not necessary to decide the question, for the reason that complainants concede that advances made to Cotton, the mortgagor, were secured by prior mortgages efficaciously executed, and they do not seek to avoid payment of any part of the debt due to the respondent, and have offered to do equity.

The next contention is that the power of sale in the mortgage which was executed after the adoption of the Code of 1923 is silent as to the place of sale, within the spirit and letter of section 9011 of the Code, which provides: "If a deed of trust or mortgage, with power of sale, be silent *as to the place* or terms of sale, or as to the character or mode of notice, a sale may be made *at the courthouse door* of the county wherein the land is situated, after condition broken, for cash to the highest bidder, after thirty days' notice of the time, place and terms of sale by publishing such notice once a week for four consecutive weeks in a newspaper published in the county wherein said lands or property in said mortgage or deed of trust are situated." (Italics supplied.)

And section 9018 provides: "All sales of real estate, made under powers contained in mortgages or deeds of trust contrary to the provisions of this article, shall be null and void, notwithstanding any agreement or stipulation to the contrary."

Before the adoption of the Code of 1923 and as to mortgages executed prior thereto, not within the influence of section 9011, it was the settled law that, if *no specific* place of sale was named, and none is then provided by law, the selection of a place was left to the reasonable and prudent discretion of the grantee of the power. State Bank of Elberta v. Peterson, 226 Ala. 13, 145 So. 154.

The statute was a new section incorporated in the Code of 1923, and its provisions are coupled by the disjunctive conjunction "or," and, of course, if any one of the elements in the power of sale is lacking, this brings it within the purview and scope of the statute. It must also be observed that the statute fixes a *specific place*, "the courthouse door of the county." Whether or not it was the legislative purpose to take from the grantee of the power the reasonable and prudent discretion of selecting the specific place of sale, where such specific place is not fixed by the power itself, need not be decided in this case.

██ Our judgment is that in the circumstances disclosed by the evidence the foreclosure was an unconscionable abuse of the power of sale, and on general principles of equity the foreclosure sale should be set aside and vacated and the foreclosure deed canceled, leaving the complainants the right to enforce the equity of redemption to which they succeeded by the death of the mortgagor.

As before stated, the mortgagor at the time of the foreclosure was confessedly a non compos mentis; he had had a third stroke of paralysis, and his death was then impending, and Mrs. Cotton and some of the children had been induced to sign a statement—affirming

the correctness of the amount of the indebtedness due the respondent from the mortgagor, Cotton—a rather unusual step, unless there was some inherent infirmity- in the alleged debt. The statement was signed, as some of the evidence shows, that Mrs. Cotton and her children might retain the possession and enjoyment of their home, though they had in fact no knowledge of the truth of the statements contained in the writing, and on its face it was calculated to induce belief on the part of the signers that the due date of the debt would be extended until October 1, 1928. Yet the foreclosure took place on the 15th of August, 1928. "Circumstances of undue publicity and particularity, as well as secrecy in the reservation of benefits, are regarded as indicia of fraud."⸱ Virginia Carolina Chemical Corporation et al. v. Satsuma Orange & Pecan Groves Co. et al., 227 Ala. 172, 148 So. 853; Crawford et al. v. Kirksey et al., 55 Ala. 282, 28 Am. Rep. 704.

■■ While the insanity of the mortgagor occurring after the execution of the mortgage embodying a power of sale neither suspends nor impairs the power, yet such power is not only coupled with an interest, but is quickened with an element of trust, and the donee of the power is charged as a quasi trustee with the duty of fairness and good faith in its execution, to the end that the mortgaged property may be disposed of to the mortgagor's pecuniary advantage in satisfaction of his just debt. Harmon v. Dothan Nat. Bank, 186 Ala. 360, 64 So. 621; Kelly v. Carmichael, 217 Ala. 534, 117 So. 67.

Therefore, in the light of the trust relation, if the power is exercised while the mortgagor is insane, a court of equity should examine the transaction with careful scrutiny, and, in the absence of absolute good faith and fair dealing, will set aside and annul the foreclosure, and restore the equity of redemption. Encking v. Simmons, Administrator, etc., 28 Wis. 272.

The judgment here is that the complainants were, on the pleadings and proof, entitled to the relief prayed by their substituted bill. The decree of the circuit court, therefore, is reversed, and a decree here rendered vacating the alleged foreclosure of the mortgage under the power of sale, canceling the deed executed in pursuance thereof, and establishing and enforcing complainants' equity of redemption.

The matter of taking and stating the accounts due from the estate of the mortgagor to the defendant is referred to the register, who will proceed, after due notice as required by the statute, to hear evidence, using such testimony and documentary evidence on file as may be material, and such other evidence as the parties may offer, and to the end of purging the mortgage debt of usurious interest is authorized to compel the respondent to produce before him all such books of accounts and other documentary evidence as may be material.

In transactions on which usurious interest is included in the notes and mortgages, the register will charge the estate of the mortgagor with the principal amount advanced to him by the defendant, without interest.

In transactions where advances were made, free of usury, the register will charge the estate with the principal amount advanced, and interest on the partial payment plan where payments are shown.

The register will charge the estate with all advances made as payments to the Federal Land Bank, and applied on the reduction of the mortgage debt due to said Federal Land Bank, and advances made in the payment of taxes and insurance on the property—the 489 acres—to the state and county. If usurious interest was not included in such advances in the paper taken as security, legal interest will be computed thereon.

Money advanced at the instance of Mrs. Cotton during the year 1928, in equitable effect, was advanced and used for the benefit of the mortgagor and his estate, and the register will charge said estate with the actual amounts so advanced, without interest.

Advances to third parties and for which M. E. Cotton stood as surety were not advances to him and did not become a part of the mortgage debt, and any such amounts are not proper charges.

The register will credit the account with all payments made in money or property, including property taken or received from Mrs. Cotton, and, if property, and the value was not fixed by agreement, the register will ascertain the reasonable market value of such property as of the date taken or received, and take this as a basis of the credit.

The register will credit the account with $1,883.22 as of February 13, 1928, the date of the note and mortgage from Johns to the defendant.

Charge the defendant with the rents, incomes, and profits, less necessary and beneficial improvements made on the 489 acres, and credit the same in reduction of the mortgage indebtedness as ascertained.

Charge the defendant with the proceeds of

the life insurance policy, less the $187.50, used in paying the burial expenses, and, if the other credits are not sufficient to extinguish the mortgage debt, apply sufficient of the proceeds to discharge said indebtedness, and ascertain the balance, if any, of the insurance money in the hands of the defendant.

Claims for attorney's fees and other costs of the foreclosure are denied and disallowed.

The register will make and file his report and allow the same to remain on file for five days for exceptions, after which he will deliver the same, together with such exceptions as may be filed thereto, to the judge of the circuit court for his consideration.

All other questions are reserved for consideration by the circuit court.

Reversed, rendered, and remanded.

ANDERSON, C. J., and THOMAS and KNIGHT, JJ., concur.