164 So. 371

# FIRST NAT. BANK OF OPP v. COTTON et al.

## 4 Div. 798.

Supreme Court of Alabama.
Oct. 31, 1935.

Rehearing Denied Dec. 12, 1935.

290

C. B. Fuller, of Andalusia, for complainants-appellees.

Mulkey & Mulkey, of Geneva, for respondent-appellant.

BOULDIN, Justice.

For a statement of the case presented by the record on former appeal, reference is made to our decision, Cotton et al. v. First Nat. Bank of Opp, 228 Ala. 311, 153 So. 225.

The decree of this court pursuant to that decision appears in the report of the case on this appeal.

The reference ordered in that decree was executed by the deputy register.

[1] The register is empowered to appoint deputies "with full power to transact all business and perform all the duties of such Register." Code, § 6511, as amended Gen. Acts 1931, p. 676.

Without construing this act as to certain functions and duties of the register, involving the responsibilities of a bonded officer, we hold such deputy register may be empowered to hold references and make reports. The evident purpose is to provide for cases of disability of the register, or an adequate official force to perform the duties of the office from time to time.

On final hearing upon the report of the register, and exceptions thereto filed by both parties, the trial court modified the report in respect of certain rents for which the mortgagee bank should account, confirmed the report as modified, and rendered his decree of date October 10, 1934, in favor of complainant, Mrs. A. E. Cotton, against the respondent bank, for the sum of $2,-286.34, being the balance of proceeds of an insurance policy on the life of M. E. Cotton, payable to A. E. Cotton, but held by the bank as collateral security for the mortgage debt at the time of the death of the insured.

Both parties appeal and assign errors.

The record on the present appeal contains only the proceedings subsequent to the decree of reference by this court. The register, being directed by that decree to consider the evidence theretofore taken, and any further evidence offered on the reference, a review of the decree now before us calls for a consideration of evidence appearing in both records. So far as material, both will be treated as the combined record on this appeal.

As disclosed in our former decision, the primary equity of the substituted bill was the vacation of a foreclosure sale under the mortgage, reinstating and enforcing the equity of redemption of the widow, heirs at law, and personal representative of the deceased mortgagor, or the cancellation of such mortgage, if fully paid.

Incident and preparatory to this relief was an accounting.

Among the matters for accounting was the issue of usury in the mortgage debt. Without repeating the language of the former decision on this issue, this court definitely expressed the opinion that usury was included in the face of the final renewal mortgage of December 6, 1926, for $4,-561.57; directed the register to state an account eliminating all interest, and charging the mortgagor with only the principal of the several loans in which usury appeared.

The deputy register found and reported no usury. On what ground he based his conclusion does not clearly appear.

[2] Counsel for the bank suggest his finding may be supported on the theory that there was no mutual agreement to pay usurious interest, citing Dominey v. Dowling-Martin Grocery Co., 200 Ala. 619, 76 So. 977, and Driver v. Johnson, 211 Ala. 184, 100 So. 116.

The usury statute by its terms, and in the nature of it, is directed against contracts

to pay more than the lawful rate of interest for the loan or forbearance of money, etc. Code, § 8567, as amended by Gen.Acts 1931, p. 783.

But it is settled in this jurisdiction that this does not require an actual intent of both parties to pay and receive more than the lawful rate. If the lender, for example, knowingly inserts in the face of the obligation an amount including interest at an unlawful rate for the time the borrower is to have the use of the principal, and the illiterate or confiding borrower executes the obligation without knowledge that such unlawful rate is being charged, the transaction is usurious, just as if both parties had the actual intent to stipulate for usurious interest. Usury laws are for the protection of the borrower against the cupidity of the lender. The borrower may not be able to figure the amount of lawful interest included in the face of the paper maturing at a future date, or he may confide in the banker to make the calculation.

In our view unlawful interest so stipulated is one of the most odious forms of usury. Elba Bank & Trust Co. v. Davis, 212 Ala. 176, 102 So. 117.

We are of opinion the entire record now before us discloses prima facie that the mortgage debt was infected with usury in the several respects mentioned in the former decision. It was then recognized that an accounting was necessary on that issue.

In that opinion it was said: "To the end of purging the mortgage debt of usurious interest [the register] is authorized to compel the respondent to produce before him all such books of accounts and other documentary evidence as may be material." Cotton et al. v. First Nat. Bank of Opp, 228 Ala. 311, 316, 153 So. 225, 230.

This was merely advising the register of his authority in this regard conferred by law (Code, § 6596, subd. 2), and impliedly directing him to exercise such authority.

At the initial hearing before the register complainants' counsel asked for the production of records pertaining to the account of M. E. Cotton, the mortgagor, naming, among others, the loan and discount records and individual deposit ledger sheets for the years 1924 and 1925. Later a formal order was requested and made by the register in very general terms, calling for the production of all the records and documents pertaining to the account of the mortgagor subsequent to the date when the account was fully paid up. Such requests and orders were never complied with. Instead, the record discloses a long course of examination touching the various records kept by the bank, their availability, etc.

This course of procedure was interspersed with demands for production of records, sometimes naming certain records, with counter demands for a specification of the particular records wanted.

The reasonableness and practicability of producing the records wanted was the subject of much controversy and testimony. Finally, the register closed the reference without the production of any records save liability ledger sheets, disclosing transactions material for both sides, but no definite information touching the matter of usury vel non.

On the hearing a motion was made before the trial judge to hold the respondent in contempt. The court exonerated the respondent, holding, in effect, that it was impractical to comply with the order of the register.

■ In response to insistence of complainants-appellants on the question of contempt, we merely remark there is no question of contempt of any order of this court, nor grounds for denying respondent an equitable accounting because of these matters.

Dealing, however, with the failure of the register to require the production of records, it appears that records accumulated in large volume, until, along about 1928, the old records, dating back, say of 1925, were boxed up and stored. As to these stored records, it appears a loose-leaf system was used, and they were stored in an orderly manner, no doubt for preservation for reference when occasion demanded.

■ It appears the needed records from 1922, when the first mortgage was given by Mr. Cotton, resulting through successive loans, advances, and payments from time to time, in the mortgage indebtedness here involved, may and should be produced or made available for examination by the register and the parties. While involving time and inconvenience, it is the duty of the banker, as keeper of the accounts with his customers, to undergo the same inconvenience in judicial proceedings to disclose the facts essential to the equities of the opposing party which he would reasonably exercise in establishing his own.

The records not stored were not produced, nor substantial reason given for not

293

so doing. Indeed, the record here discloses certain statements made up on behalf of respondent touching the items entering into the renewal mortgages, not shown by the liability ledger sheets. These statements, admittedly made up from the records, were put in evidence for respondent. These original records should have been produced.

As for the generality of the demand, or order, it is sufficient to say that the bankers had the best knowledge of just what records would disclose the principal sums loaned, the time they were to run, and the discount or interest charges.

That these were the records wanted on the issue of usury was clear enough. As, of course, there was no occasion nor call for dumping into the court of tons of records relating to business with thousands of customers through the years.

■ At one time counsel for respondent suggested a suspension of the hearing and a co-operative search for the records wanted. Probably the situation would have been much bettered if this suggestion had been accepted. But, a failure so to do cannot be regarded as a waiver of the right to have records produced in the regular way.

■ The register should have required the production of such records as were obviously available and useful in the premises. The parties being before him, the production of further records could well be required as the need for them developed on the hearing. For example, a demand for the production of all original deposit slips covering the account of Mr. Cotton was, under the evidence, too sweeping, involving labors not appearing to be necessary. There was no need for bringing in multiplied records disclosing the same facts. If any particular transaction called for the production of a deposit slip, it should have been dealt with when occasion arose.

■ Complainants-appellants ask this court to recast the account, eliminating interest on items infected with usury, and render the cause.

We are mindful that this cause has now been pending a long time, the record already grown voluminous; that the lands, which, by the decree as rendered, have been freed from the mortgage debt, are still held by respondent as mortgagee in possession.

Still, this court will not, with the incomplete evidence, before us, undertake to restate this account. We could have no assurance of doing equity between the parties, even, if in any case, this court should undertake the functions of a register or special master, in stating complicated and voluminous accounts.

■ In this connection complainants-appellants undertook to make out a statement of account covering the alleged usury, verified this statement by affidavit, and filed same in the cause.

It is insisted this statement is in pursuance of rule 90, Chancery Practice; that such statement should be taken as prima facie evidence, and so adopted as correct unless disproved by other evidence.

Rule 90 deals with accounts, or mutual accounts, wherein the party filing such statement sets forth the items of his account against the opposing party. It furnishes a basis of inquiry. What probative force should be given it, the rule does not declare.

The rule has no application to a case like this wherein no accounts were kept by complainants, but the accounting goes to the inquiry of usury vel non in the various transactions.

A statement made up on advice of counsel as expressive of complainants' version of these transactions, or deductions from the record, is not to be given probative force within itself. It may remain on file (like the statement of account made out by respondent purporting to show amount claimed for statutory redemption) for whatever it may be worth in directing attention to matters to be determined on the evidence.

■ On appeal of respondent bank, errors are assigned for the purpose of reviewing directions given in the decree of reference touching specific matters of account. The register followed such directions, as admittedly he should have done. The directions having come from this court, the trial court was likewise bound by them. But additional testimony was taken, and exceptions filed with a view to striking out such directions, and again considering these matters on their merits.

One of the directions complained of is this: "Advances to third parties and for which M. E. Cotton stood as surety were not advances to him and did not become a part of the mortgage debt, and any such amounts are not proper charges." 228 Ala. 316, 153 So. 225, 230.

This matter was further treated in paragraph (1) of the opinion. 228 Ala. 314, 153 So. 225.

Admittedly, this direction related to loans by the bank to tenants of the mortgagor for 1926, secured by notes with the landlord as surety or joint maker. The liability ledger sheets of these tenants' accounts disclose part payments on them, and the balance on each is entered satisfied in full on December 7, 1926. The evidence further discloses that these balances aggregating some $1,300 had been included in the face of the renewal mortgage given by the landlord on December 6, 1926.

If a landlord execute a note with his tenant, either as surety or comaker, to obtain advances from a bank, or other third party, and at the end of the year the landlord takes up the unpaid balance, giving his individual mortgage as security, and obtains the satisfaction of the old note, the transaction is entirely legal, supported by a valuable consideration, and the mortgage security therefor valid and binding.

It is not a question, in the light of this new evidence, whether a stipulation in the mortgage of January, 1926, covering future advances to the mortgagor would include those for which he became surety with his tenants; but a question of including these as part of the mortgagor's indebtedness in the renewal mortgage. That was a matter entirely with the parties when renewing the land mortgage, December 6, 1926.

We are impressed this direction to the register should be stricken from the decree of reference, and the matter left to his determination on the merits.

Complainants-appellants insist the decree of this court in this regard was final, and beyond the control of the court at a subsequent term.

A decree in equity is often final in part and interlocutory in part. A decree of reference calling for a report with right to make exceptions is essentially interlocutory. Directions given in a decree of reference are likewise usually interlocutory.

In an equity cause wherein reference is sought and naturally anticipated in case the primary relief is awarded, it is customary, as in this cause, to authorize further proof on the reference touching the subject-matter of reference. In view of such recognized practice, the parties may introduce in the first instance only such evidence as goes to the main equity, and such further evidence as will indicate the scope of the issues to be covered in a decree of reference. This practice saves cumbering the record with details which may never come up for consideration.

While the court may give directions to allow or disallow specific items which appear to be covered by the evidence at hand, these directions are to be treated as part of the interlocutory decree of reference, unless there is an express decree clearly final in character, foreclosing further inquiry thereon. Cochran v. Miller, 74 Ala. 50; Adams v. Sayre, 76 Ala. 509; Gainer v. Jones, 176 Ala. 408, 58 So. 288; Fleming v. Copeland, 210 Ala. 389, 98 So. 128.

The decree of reference on former appeal, as shown by its terms, was intended to be such as the trial court should have rendered. In considering its finality, it is subject to the same rules as if rendered by the trial court.

Our conclusion is all the directions given in the decree of reference are interlocutory in character, and subject to further review by this court.

These directions having been given on consideration of the record, they should be reviewed on the record as now presented. The failure of the bank to note the testimony on exceptions which the trial court could not act upon will not be held by this court as sufficient ground for ignoring these questions.

The real equities of these parties is the end sought.

The direction to credit the account with $1,883.22, the amount of the Johns mortgage, will not be disturbed. The facts as to this transaction are sufficiently disclosed in former decision. The bank is not in position to now insist on a hearing as to the value of the equity of redemption thus acquired, or the insolvency of Johns, and account merely as in case of the conversion of collateral at law; nor that the bank be treated as a trustee in invitum, involving an accounting and redemption of this Johns tract, which, by the doings of the bank, has been held as its own for many years. If there be a right of election in this regard,

it is in the complainants, not the respondent.

The decree of the trial court is reversed, the report of the deputy register set aside, and the cause remanded for proceedings on the decree of reference heretofore entered by this court, modified as above indicated. The reference may be executed by the register, or deputy register, or by a special register to be appointed by the trial judge in his discretion. Code, § 6511, as amended by Gen. Acts 1931, p. 676. Let the costs of this appeal in both courts be divided, two-thirds to be paid by the bank, and one-third by complainants.

Reversed, rendered, and remanded.

GARDNER, BROWN, and FOSTER, JJ., concur.