3 So.2d 68

**FIRST NAT. BANK OF OPP et al. v. WISE et al.**

**4 Div. 182.**

Supreme Court of Alabama.

May 15, 1941.

Rehearing Denied June 30, 1941.

Mulkey & Mulkey, of Geneva, J. M. Rowe, of Elba, and Steiner, Crum & Weil, of Montgomery, for appellants First Nat. Bank of Opp et al.

B. W. Smith, of Samson, and E. F. Steiner, T. H. Hedgepeth, and H. D. Finlay, Jr., all of New Orleans, La., for appellant Federal Land Bank of New Orleans.

Powell & Fuller, of Andalusia, for appellees.

GARDNER, Chief Justice.

The original bill sought the avoidance of a foreclosure sale of real and personal property under a power of sale in mortgages executed by P. T. Wise to the defendant, First National Bank of Opp, and an exercise of the equity of redemption by the widow, heirs at law of P. T. Wise, deceased, and the administrators of his estate. The mortgagor Wise died on December 28, 1930, and the mortgage foreclosure sale occurred January 16, 1931. This bill was filed April 15, 1935, more than four years after the foreclosure sales.

■ In the "ordinary case" by analogy to the time allowed for statutory redemption, there is fixed the period of two years as a reasonable time for the mortgagor to elect to disaffirm the sale, and if an ordinary case is here presented, so far as the adult heirs are concerned, the bill is filed too late. But where there are peculiar features that seem to rebut the presumption of ratification after the lapse of two years, the courts relax the rule and decline to give effect to the presumption of ratification.

In First National Bank of Opp v. Wise, 235 Ala. 124, 177 So. 636; the holding was that the bill's averments sufficed to establish the exception and that the doctrine of laches did not stand in the way of relief. A careful reading of the averments of the bill upon which that decision was rested, as therein found reported, suffices to demonstrate the correctness of the holding of that authority.

Subsequently the bill was amended with the Federal Land Bank and others made parties thereto seeking also to invalidate a foreclosure sale of the Land Bank's mortgage, charging among other things fraud and collusion with the First National Bank of Opp. The sufficiency of the bill as amended was here sustained. First National Bank of Opp v. Wise, 238 Ala. 686, 193 So. 131. The bill was again amended, answers duly filed and testimony taken by depositions. Upon submission of the cause for final decree on pleadings and proof the court granted complainants full relief sought and from that decree defendants prosecute this appeal.

In the bill as last amended some of the matters charged and stressed originally are omitted. Illustrative is that contained in the original bill that the mortgagor Wise was unlearned and that he had delivered farm products in part payment and was wholly dependent upon the Bank as to the status of his account and complainants have no way to ascertain the same. The evidence gives no support to these averments of the original bill, and as last amended the amount of the account does not appear to be questioned except that it contained usury. And as to the mortgagor's unlearned condition, his son, J. E. Wise, one of the administrators of his estate, testified that his father had "a pretty good education" and kept his books "for the hands on the place".

But no question of pleading is here involved and no occasion to elaborate thereon. In the main the averments of the original bill are relied upon for relief as to the mortgage foreclosures of the First National Bank (to so abbreviate the name).

Charges are readily made, but substantiation by the proof is an entirely different matter. From the bill as here first considered the defendant, First National Bank, was portrayed as taking advantage of the death of the mortgagor in order to acquire the property embraced in its mortgage at a great sacrifice in utter disregard of the rights of his heirs and to reap a profit at their expense. And all of this done precipitately and without consultation with any of the heirs. But the proof, to our minds, presents an entirely different picture.

■ This record is voluminous. Numerous witnesses have been examined and the evidence of each has been read with painstaking care and with due regard for the responsibility resting upon us. No detail of proof has escaped attention. We have interpreted the passage of the Act of 1915 (General Acts 1915, p. 594, now Section 10336, Code 1923) as a legislative invitation to refrain from a detailed discussion of facts which would serve no useful purpose as a precedent. Williams v. Dent, 233 Ala. 109, 170 So. 202. We will, therefore, rest content with some general observations leading to our conclusion that the trial court incorrectly decreed relief in this case.

Our study of the evidence is persuasive that the First National Bank not only did not want to acquire this property and had no desire whatever to oppress the heirs of the mortgagor, but on the contrary did all possible to interest two of the heirs, J. E. or Doc Wise and his brother Sam, who were the representatives of the others, to take over the property for the debt due. The aggregate of the two bids by the Bank, that of the real estate of $1,800 and of the

personalty of $960, constituted the sum the Bank claimed as the balance due by the mortgagor on his indebtedness to it. These two brothers appear to have been the most successful of the children and seem to have had some property of their own. Sam Wise, at the request of the Bank's president, went on the premises and made a list of the personalty which he gave the Bank and we are convinced agreed to the valuation as then written down. We do not overlook the argument of counsel for complainants that this list was secured by the Bank's president by some sort of deception and constitutes an act indicating the fraud of which complaint is made in the entire matter. But we find no justification in this record for any such argument, and we are persuaded it arose, as defendants insist, out of the effort to have these two men take over the property and assume the debt.

True the Bank wanted them to give better security by inclusion of some of their personal property in a new mortgage. But if the property of the mortgagor was as valuable as they now insist, that does not appear at all unreasonable. This they declined to do and several witnesses testify these two stated that the property embraced in the mortgages was worth no more than the debt. By giving the additional security the mortgaged property could have been by them acquired on credit. But they were unwilling to so acquire the property. We do not overlook the reason now advanced that some of the heirs were minors. But we are not impressed that this question then entered into their consideration.

The Bank officials testify these two stated that the property may as well be sold, and we think their testimony is corroborated by all the facts and circumstances here appearing. We are persuaded also that the representative of the Bank who went to the place and took charge of some of the personalty just prior to date of foreclosure, placing some of the corn and other products under lock and key, did so with no other purpose than protection against waste and with the knowledge and acquiescence of Sam and Doc Wise, if not indeed at their suggestion. We cannot agree with complainants there was anything improper here. The sale both of the real estate (situated in Coffee County) and the personalty was had at the court house in Elba, conducted by the attorney for the Bank. It was at public outcry and the Bank was the only bidder. Some of

the witnesses say the heirs were present, meaning, we assume, the adult heirs. The widow was there with J. P. and J. E. or Doc Wise and Averett, their brother-in-law and one of the administrators of the estate.

■ As we read the record, Sam Wise himself was not present though some of the evidence indicates all the brothers were on hand. At any rate, the heirs were well aware of the sale and were well represented thereat. True the personalty was on the farm eleven miles away and it was sold in bulk. But no objection whatever was made to the sale on account of either of these matters. So far as the sales were concerned the widow and heirs present acquiesced in the manner in which it was being conducted. And the price for which the personalty was bid in was the exact amount which Sam and Doc Wise had agreed was the valuation when talking with the Bank president at the time of the prior negotiations. Of course, the mortgagee must act in good faith with fairness and prudence in the execution of the power of sale, just as any other trustee. Harmon v. Dothan Nat. Bank, 186 Ala. 360, 64 So. 621; Zadek v. Burnett, 176 Ala. 80, 81, 57 So. 447; Schloss & Kahn v. Brightman, 195 Ala. 540, 70 So. 670; State Bank of Elberta v. Peterson, 226 Ala. 13, 145 So. 154. And though a sale in bulk may be irregular (De Moville v. Merchants & Farmers Bank, 233 Ala. 204, 170 So. 756), yet to avail the mortgagor or his heirs it must appear that from any irregularity as to foreclosure, injury resulted. Steed v. Carmichael, 223 Ala. 193, 134 So. 885.

■■ Upon the question of valuation of the personalty much proof has been offered, all of which has been duly considered. The most valuable part of the property consisted of nine mules, one of which was crippled, and all with an average age of something over ten years. Much of the testimony consists of the opinion of the witnesses and very naturally they widely differ. Van Heuvel v. Long, 200 Ala. 27, 75 So. 339. We are impressed the testimony for defendants, consisting in part of witnesses whose business it was to buy and sell mules and the actual invoices offered in evidence, represents the more conservative view. It must be borne in mind also that this sale was had during the period of nation wide economic depression, of which the courts take judicial notice (Indemnity Ins. Co. v. Holiway, 233 Ala. 100, 170 So.

329; De Moville v. Merchants & Farmers Bank, supra), though the true intrinsic value of the farm products should be kept in mind. De Moville v. Merchants & Farmers Bank, supra.

We do not think it can be said the sale at the court house at Elba was not within the very broad language of the power of sale ("with or without the possession of the property"), though the property remained on the farm. But in any event we are not persuaded the heirs of the mortgagor suffered any injury by reason of this fact and we are convinced that the property brought its reasonable fair value under all the circumstances. Certain it is the adult heirs did not consider that as a matter of any consequence, and offered no objection. True after the sale Doc Wise expressed some dissatisfaction and thereafter spoke to an attorney about the matter and as a consequence he and Averett were appointed administrators of the estate in April, 1931. In July, 1931, the attorney wrote a letter demanding of the bank the amount of the debt and lawful·charges which was duly answered. Following this and in November, 1931, a bill was filed. But this bill was dismissed by the complainants in September, 1934. But all of this appears to have covered the matter of the exercise of the statutory right of redemption, or in any event if that suit complained in any manner as to the method of sale, it was abandoned.

The present bill was subsequently filed which looked to the exercise of the equity of redemption as distinguished from the statutory right. And though as last amended the bill may still be so considered, it is significant that in the prayer there is in fact no specific relief of.redemption sought, but a decree against the Bank for twenty-five thousand dollars representing difference in the foreclosure price and the value of the land sold and the personalty, though at the sale no objection was interposed and the effort to invalidate the foreclosure interposed only after four years and more had elapsed. Our reference herein to the fact that no objection was interposed to the method of sale is not rested upon any matter of estoppel, as argued, but only by way of illustration of the attitude of the adult heirs at the time and as indicating their view that the method of sale was not disadvantageous to them.

■ But we forego further discussion of the proof. We have considered the matter of the valuation of the property and the method of its sale from all viewpoints and have not neglected notice of the gathering of a few persons at the residence about one week prior in anticipation of an erroneously rumored sale. Taking, however, into consideration the whole evidence and carefully weighing the same, we find ourselves persuaded there was in the sale no element of oppression or fraud. On the contrary, we are convinced the sale was fairly conducted and that the property sold brought a fair and reasonable price and that the representatives of the.heirs present on that occasion saw no objection to the fact that the property was sold in bulk while yet on the farm, and it is clear enough there was a substantial sum still due the Bank after crediting the amount of the purchase price of the personalty and making due allowance for any matter of usury.

As to the land the original bill made no mention of the fact that the mortgage to the First National Bank was subordinate to a mortgage to the Federal Land Bank securing some $8,000 on the 400 acres of land. But the amended bills so disclose and complainants now insist both the foreclosure sale of the land by the First National Bank had on January 16, 1931, at the same time of the sale of the personal property and the foreclosure sale of the Federal Land Bank had in July, 1935, and during the pendency of this suit were each invalid. But complainants seek relief against the First National Bank growing out of these foreclosures if it be found that the Federal Land Bank foreclosure is not to be disturbed.

Upon this phase of the case little need be said. As to the foreclosure sale of the land mortgage of the First National Bank it is not seriously questioned that the power of sale was duly followed. The four hundred acres constituted one large farm and there is nothing in this record indicating that, from any practical standpoint, a sale of the whole, rather than in parcels, was not the most advantageous manner in which to make the sale. The real insistence on part of complainants and upon which they greatly relied was that the personalty of which the bank took charge was of value sufficient to pay all that was due and of consequence the holding should be there was nothing due on the land mortgage and the foreclosure ineffective for this reason.

Our discussion and conclusion upon this matter has already been sufficiently stated

and needs no repetition. We think the whole insistence of complainants upon this point is rested upon an exaggerated concept of values with which we are not in accord, after a careful study of all the proof. After the land foreclosure the First National Bank took charge of the place and operated the same with tenants on shares. But the Land Bank mortgage was outstanding and over due. Its foreclosure had at one time, it seems, been contemplated. At any rate, it was then subject to foreclosure. The First National Bank made an arrangement with the Land Bank to pay so much per year to said Bank out of the operation of the farm and thus held off any foreclosure. This agreement was in writing.

Afterwards this suit was filed and the First National Bank had the Land Bank to agree to a cancellation of this agreement and the latter Bank in due course proceeded to foreclose the mortgage and purchase at the foreclosure sale for $3,900. Soon thereafter the Land Bank sold the property to one Wright as well as the balance of the debt for $8,100 on long time and secured the balance (some $1,620 being paid in cash), by a mortgage on the land. No claim for the balance of the debt appears to have been filed against the estate of the mortgagor, and the sum and substance of the whole matter was that the land went in full satisfaction of the mortgage.

Complainants now insist the land was worth a very large sum of money, twenty-thousand dollars. Much evidence was taken upon this matter of valuation which we have duly considered. Our conclusion is the better view of the true value was represented by defendant's witnesses who place the same at about $20 per acre and we are impressed that at the time Sam and Doc Wise, representing the heirs, considered it very doubtful as to whether or not the real and personal property were worth any more than the debt due these two banks. The argument that the Land Bank mortgage was not in default because of the arrangement made with the First National Bank is without merit. This was a matter between these two banks for their own convenience and security (no one for complainants pretending to meet the installments as they fell due), and the banks could discontinue it as they saw fit.

Complainants argue there was some sort of conspiracy between the two banks against their interest and that the Land Bank foreclosure was more for the protection of the First National Bank and an abuse of the power of sale. Castleman v. Knight, 215 Ala. 429, 110 So. 911; Cotton v. First Nat. Bank, 228 Ala. 311, 153 So. 225; Randolph v. Vails, 180 Ala. 82, 60 So. 159. But we find nothing in this record to justify any charge of collusion or conspiracy or any evidence tending to show fraud or oppression. Fraud is never presumed, but must be established by the proof. Waldrop v. Martin, 237 Ala. 556, 188 So. 59; Morris & Co. v. Barton & Allen, 180 Ala. 98, 60 So. 172.

The officials of the First National Bank say they had no connection whatever with the foreclosure of the Federal Land Bank and nothing to do with the property after such foreclosure nor were they concerned with its disposition from the time when the sale was made to Wright and the subsequent sale by Wright to Boutwell. And we find 'no justification in this record for a contrary conclusion. Certainly no reliable proof was offered in its refutation. For years no payments had been made on the Federal Land Bank mortgage and it was reasonable enough to assume it would proceed to foreclosure and protect its interest, as it had a right to do.

That the foreclosure was otherwise regular and in conformity to the power of sale is too clear for discussion. And we have stated our conclusion that no fraud, collusion or oppressive conduct has been made to appear or any just cause for invalidating the foreclosure sale.

Our conclusion is that though the bill makes out an extraordinary case for the extension of time beyond the usual two years for filing a bill of this character, yet we are convinced the averments of the bill are not sustained by the proof, and as to the adult heirs relief was due to be denied upon the doctrine of laches. And as to the minors we are persuaded there is made to appear no fraud or oppression and no irregularity which in any manner affected the result, but that the property sold for its fair value and was not of value in excess of the indebtedness due thereon by all the mortgages here involved.

It results, therefore, that the decree is due to be reversed and one here rendered denying relief and dismissing the bill. It is so ordered.

Reversed and rendered.

BOULDIN, FOSTER, and LIVINGSTON, JJ., concur.