21 So.2d 244

**ROUBICEK v. ROUBICEK.**

**6 Div. 270.**

Supreme Court of Alabama.
Jan. 18, 1945.

Rehearing Denied March 1, 1945.

Rosenthal & Rosenthal, of Birmingham, and Hill, Hill, Whiting & Rives, of Montgomery, for appellant and cross-appellee Joseph Roubicek.

See also ante, p. 307, 21 So.2d 253.

Solomon & Berkowitz, of Birmingham, for appellee and cross-appellant Leta B. Roubicek.

SIMPSON, Justice.

By removal to equity of a common count action on the law side of the docket where Joseph Roubicek sued his wife Leta for funds allegedly his, which she had withdrawn from their joint bank accounts, and consolidating that case with a bill in equity where Leta sued Joseph for divorce and alimony, the proceedings evidenced by the present record were transacted. It is from

a final decree in this consolidated cause that the appeal proceeds.

The divorce was stoutly contested and Mr. Roubicek, as to the accounting phase of the case, contended that his wife had designedly made withdrawals from their joint accounts, placing the funds beyond his reach, in premeditation of the planned divorce, when he should finally leave for the naval service. There was a tendency of some of' the evidence to support this contention.

Mrs. Roubicek, on the contrary, contended that the divorce had not been planned, but was determined upon after her husband left for the service upon discovery of his alleged misconduct, and that most of the funds in the various bank accounts, as well as bonds, were either hers or their daughter Ruth's, and that when she determined to file suit for divorce she only took from these accounts what was already hers. Thus, the tendency of her evidence.

The court, after hearing and considering the evidence bearing upon these several conflicting issues, granted Mrs. Roubicek a divorce and entered a decree of division of the money and properties.

Both parties have appealed from this decree and each seriously inveighs against its stipulations. The husband contends that the proof was insufficient either to support the decree of divorce or for a division of his money and property, and the wife, seeking to sustain the divorce decree, claims that most of the money and property was hers and that the husband was disentitled to share in it.

The case, on submission, was argued orally and elaborate briefs have been filed by able attorneys for the parties supporting the respective contentions. This court has read and carefully considered the entire evidence in connection with the briefs and arguments submitted and has concluded that the trial court in endeavoring to resolve the conflicting claims of the parties has dealt with manifest fairness to all concerned, and the net results achieved by the decree should, in the main, be approved. Certain technical rules of law were not applied in obtaining the division of the estate, however, and the decree should be modified and corrected to this extent.

■ The parties appear to be cultured and well-bred and, out of consideration for them, we will not undertake an extended discussion of the evidence, contenting ourselves with a treatment of only that portion which deals with the accounting and settling of the property rights of the parties. It would serve no useful purpose to relate the evidence upon which the decree of divorce is rested and we, therefore, refrain from so doing. Code 1940, Tit. 13, § 66; Skinner v. Skinner, 243 Ala. 106, 8 So.2d 826; First National Bank v. Wise, 241 Ala. 481, 3 So.2d 68. We deem it enough to observe that, as to this evidence in the voluminous record, we have given it that strict study enjoined upon us and are fully persuaded that the conclusion of the court was justified. The fact, relied upon as ground for the divorce, "ordinarily must, be established by circumstantial evidence. * * * In every case almost, the fact is inferred from circumstances that lead to it by fair inference, as a necessary conclusion." Jeter v. Jeter, 36 Ala. 391, 398; Coleman v. Coleman, 198 Ala. 225, 227, 73 So. 473—and here the proven circumstances have met this approved legal test and the decree of divorce is ordered affirmed.

A reversal of the decree of divorcement is advocated because of the contended erroneous admission, over due objection and exception, of irrelevant and illegal testimony. The argument for error and reversal is advanced upon the hypothesis that we should apply the rule—that where the trial court in equity overrules an objection to illegal evidence the statutory presumption that he only considered legal evidence does not obtain (Parish v. Hawk, 241 Ala. 352, 2 So.2d 407)—and that the admission of such evidence being erroneous, should result in a reversal of the decree.

■ We deem it unnecessary to declare as to the competency of the evidence to which these assignments of error are directed, although it may be observed that most of the testimony objected to as being hearsay was made competent by proof that the husband had been confronted with such hearsay statements and had responded thereto, thus making it admissible as part of the res gestae of his wife's charges and his denials.

■ If conceded to be incompetent, however, this evidence impresses us as so incidental and inconsequential to a material consideration of the case as to have resulted in no prejudice to the appellant. It could in no way have affected the conclusion of the trial court on the material evi-

dence, and under our modern practice, unless the record discloses that harmful error affecting a substantial right has intervened, a reversal should not be declared.

True, we have adopted for equity the prevailing rule at law that "the admission of illegal evidence over objection requires a reversal unless the remaining evidence is without conflict and sufficient to support the judgment." Pfingstl v. Solomon, 240 Ala. 58, 64, 197 So. 12, 16.

But, we have also applied Supreme Court Practice Rule 45, Code 1940, Tit. 7 Appendix, to equity cases and will not reverse a decree unless in the opinion of the court after an examination of the entire cause it should appear that the error complained of has probably injuriously affected a substantial right. State v. Mobile & O. R. Co., 228 Ala. 533, 537, 154 So. 91.

The rulings aforesaid could, in our opinion, have in no way affected the legal result and in such circumstances a reversal cannot be predicated of such rulings. Pair v. Rice, 23 Ala.App. 187, 122 So. 297.

■ Substantial error is not presumed. The burden is on appellant to establish it. Kabase v. State, 244 Ala. 182, 12 So.2d 766. Having failed to do so, a reversal of the decree on account of these rulings would be unauthorized.

The remaining assignments and cross-assignments of error meriting treatment relate to that part of the decree awarding a division of the money and property between the parties.

■ The Roubiceks intermarried in Birmingham, Alabama, in 1928, the issue of their marriage being their thirteen-year-old daughter, Ruth. The husband was a naturalized citizen from Czecho-Slovakia, an engineer by profession, with numerous college degrees from this and other countries. The wife was a native Alabamian. After some years' employment in the engineering department of the Alabama Power Company, he established his own organization in 1930, entitled Associated Engineers, to engage, as we understand it, in an engineering sales and service business patronized by industrial users of electrical equipment throughout the country. He was the sole owner and producer of the clientele and the business profited considerably as a result of his conceded talent in this line. He testifies: "The business of Associated Engineers is based strictly on personal contacts of myself, plus whatever knowledge I have been able to accumulate in that particular branch of engineering." He entered the naval service as a junior lieutenant in September, 1942, and then employed a manager on a commission basis to continue the transaction of this business in his absence, though, according to his testimony, he still contacted clients and, in 1944, produced one commission of $5,709.11. He testified that upon entering the service he designated his wife the nominal head of Associated Engineers "to represent me in my business transactions with customers and clients and employees and those firms whom we represent"—not an illogical or impractical method of carrying on in his absence, though his wife seemingly contends, with much earnestness, that because she was thus made the nominal "owner" in the contract between her husband and his manager, of which she was uninformed when it was executed, that thereafter, eo instante, the business became hers. She did work at the office and look after the books and records and for such extra-domestic services was, under the facts disclosed, entitled to compensation (In re Davidson, D.C., 233 F. 462, 465; Ex parte Alabama Textile Products Corp., 242 Ala. 609, 617, 7 So.2d 303, 141 A.L.R. 87; Larkin v. Woosley, 109 Ala. 258, 19 So. 520; 26 Am.Jur. 637, § 9), but we can concede slight merit to the contention that because of this transaction the business was exclusively hers and her husband thereby divested of all interest therein and excluded from participating in the net profits accruing therefrom.

In 1938 the couple took a trip to Czecho-Slovakia and thereafter, upon their return to the United States, certain of the husband's relatives and friends intrusted him with monies, as to which he testified:

"The trust funds came in at different times and as the money arrived in the form of a check, I deposited that amount in my account in the First National Bank and then instructed my wife to deposit in the various savings accounts that we had or buy government bonds, either in her name or in Ruth's name.

"Q. Did you set aside an amount sufficient to cover these trust funds in these various banks? A. There was a sufficient amount at any time to cover them (the trust funds).

"Q. Did Ruth have any money coming to her from any source except you? A. No.

448

"Q. Did you and Mrs. Roubicek have custody and control of these funds? A. Yes."

■ It also appears from the evidence that during the period from 1936 to 1942 government bonds in the amount of $9,000 and a savings account totaling $2,742 had been accumulated to the credit of their daughter Ruth. It seems to have been conceded that this money came from the husband's checking account, but Ruth is not made a party to the present proceedings, and we cannot declare as to these assets, nor could the trial court, and the recitation in the decree to this effect is ineffectual, a nullity and should be stricken.

Roubicek, through his business, Associated Engineers, was practically the sole producer of all the assets of the three, and the monies and bonds appear to have been reposited in their respective names for safekeeping and to build up a family savings "for the future."

Until he entered the service in September, 1942, his checking account was in his individual name, with authority of his wife to draw thereon, but thereafter for convenience in handling the various financial transactions incident to the necessities of the case, he had the account changed to a joint one between himself and Mrs. Roubicek.

The evidence also discloses that in the first part of January, 1944, Mrs. Roubicek decided upon a divorce, but for reasons irrelevant to the present discussion deemed it more practicable to await action until spring. She then transferred to the individual accounts of herself and her daughter the money on deposit in the couple's joint account and in the account of Associated Engineers. In regard to this her husband testified: "The total sum of $13,561.07 was removed by Mrs. Roubicek in the period from January 7, 1944, to March 25, 1944, without my knowledge, without my consent. All of these funds were either withdrawn from (the) joint account or from the Associated Engineers' account, which by right, I established by fifteen or sixteen years of work." Mrs. Roubicek accounts for approximately $9,000 of these alleged withdrawals, and the court, after hearing the testimony, stated the account and in the decree ordered an equal division between the parties. The $9,000 in bonds and $2,742 in the savings account to the credit of Ruth, all of which accrued between 1936 and 1942, was left in status quo, but $4,700 transferred to the daughter's account after January, 1944, was also ordered to be divided equally between husband and wife. The home (title in the wife's name) was also ordered sold and the net proceeds divided equally between the parties, and Mrs. Roubicek was awarded the ownership of Associated Engineers "provided that at such time as respondent is discharged from the United States Navy, complainant (wife) shall re-convey 'The Associated Engineers' to the respondent (husband)."

Some phases of the various awards—notably the last three hereinabove mentioned—contravene certain technical rules of law and should be corrected, but we repeat that the net result of the court's dispositions appears in the main to have been equitable and just and should not be greatly revised here.

It may be observed in passing that there seems to have been little controversy between the parties but that the approximately $11,000 described as trust monies of the Czecho-Slovakians was a bona fide transaction, meriting an adjudication for their protection. Nor does Roubicek appear to raise any question as to the $9,000 of bonds in Ruth's name, seeming for the present, at least, to desire that they should thus remain. The dispute arises as to the remainder of the approximately $45,000 estate.

■ The wife contends that because, in returning the income from Associated Engineers for tax purposes in 1942 she was designated as a partner, and in 1943 and 1944 she was denominated in the contract between Roubicek and his manager hereinabove mentioned as owner, she was therefore entitled to receive from the joint funds the net shown to have been her income as a partner in the tax return in 1942 and the net accruing to the Roubiceks from the business of Associated Engineers in 1943 and 1944, which total would achieve the net result of awarding to her the disputed items. Hence her cross-appeal.

The husband explains that the partnership return was made in order to save taxes (the wife not having been listed as an employee under the Social Security Law, 42 U.S.C.A. § 301 et seq.) and that the designation in the contract with his manager of his wife as the owner of the business was to facilitate its continued operation.

The court evidently adopted the husband's version of the transactions and concluded that, though it was his business

during these years, the wife's services were of value and that the compensation therefor, together with her alimony rights, merited an equal division of the assets on hand in 1944. We are unable to say that this was not equitable. Undoubtedly it was the husband's genius which built up the business, produced the clientele and made it what it was. Yet it was the wife's efforts which aided in continuing its operation after he left for the service in 1942.

■ In view of the prevailing rule of presumption in favor of the correctness of the trial court's conclusions on disputed issues of fact, the testimony in regard thereto having been taken ore tenus before the court, we are not willing to here disturb these conclusions. 2 Ala.Dig., Appeal and Error, ☞1008(1).

■ There is, of course, no tenability to a contention that the court may not from these joint funds, partly contributed to by the wife's industry, award a remainder, totaling a half thereof, as alimony. Allowance to the wife under the alimony statute may be made in gross, payable presently or in the future, or may be made payable in installments, or it may be a combination of both methods. Smith v. Rogers, 215 Ala. 581, 112 So. 190. The court very wisely pretermitted an allowance of a monthly stipend, suspending this consideration until after the husband's release from service. The allowance ordered for his wife is ample for present exigencies. She is shown to be a woman of talent and business ability and the status of her husband is presently so ephemeral that it may be that the future circumstances of the parties may not justify further consideration of the matter.

This allowance is, in our opinion, also generous enough to include the present maintenance, etc., of Ruth, without prejudice, of course, to a proper adjudication of the title of the bonds and money now in her name and to her credit.

■ In attempting a division of the properties, however, the trial court ordered a sale of the home and a division of the net proceeds therefrom. The evidence is without controversy that Roubicek "paid for the house and put the title in her (his wife's) name" (his testimony). It was therefore her property.

While it is the general rule that where one buys land in the name of another and pays the consideration money, a resulting trust will be declared in favor of the purchaser in the absence of all rebutting circumstances evincing a contrary purpose, this is only a rule of presumption. Lauderdale v. Peace, Baptist Church, ante, p. 178, 19 So.2d 538.

"Such a presumption will not arise however, when the conveyance is to the wife with purchase by the husband, as he is considered under legal or moral obligation to make provision for her, and a gift will be presumed." Marshall v. Marshall, 243 Ala. 169, 8 So.2d 843, 844.

Title to the property in question, therefore, is not in the husband, but is vested in the wife exclusively. But, in order to make the division of the assets belonging to the parties equal (including a present gross award of alimony), as was attempted by the trial court, one-half of the net equity in the home should be charged against her in the final accounting, with the fixing of an appropriate lien in favor of her husband to protect his share of the reimbursements to be made by her. In reframing the decree the trial court should so declare.

■ The ordering of a division between the parties of the $4,700 which Mrs. Roubicek, in January, 1944, transferred from the couple's joint account to the savings account of Ruth also resulted in an erroneous application of pertinent principles of law. The daughter is not a party to the suit and an adjudication in regard to these funds would be unauthorized and the decree of the lower court should also be corrected to this extent. In order, however, to execute the process of an equal division, as undertaken by the court, the $4,700 extracted by Mrs. Roubicek from the joint monies, without the consent and against the wishes of her husband, should be charged against her and she should reimburse her husband in an amount equal to one-half of said sum.

■ Title to the $9,000 in bonds and the $2,742 in money placed in the name of the daughter by the father's express authorization during the period from 1936 to 1942 should play no part in the present accounting between the parties and can only be adjudicated in a proceeding in which the child is made a party and duly represented. Huddleston v. Fuller, 229 Ala. 74, 75(3), 155 So. 556; 30 C.J.S., Equity, p. 564, § 133; 8 Ala.Dig., Equity, ☞94.

■ Much force may be conceded to the argument that the money due the Czecho-

Slovakians is the debt due by Roubicek and chargeable solely out of his one-half of the estate and not subject to impressment upon the joint funds. The trial court, however, did not so agree nor can we. It is quite clear from the testimony that when these funds were received they were deposited from time to time in Roubicek's account and then transferred either to the wife or the daughter, inferably for safekeeping. Roubicek says it was done and it is not denied by his wife. It probably was done, but whether or no, the accumulated wealth, aside from these monies, was largely the product of Rubicek's genius and, according to his quoted testimony, he had at all times sufficient funds in the various accounts of himself, his wife and daughter to protect this trust. We cannot, therefore, indulge much merit to the contention that by reason of Mrs. Roubicek's connection with and services for the Associated Engineers from the latter part of 1942 to January, 1944, an award to her of practically all of the resources of the family and the consequent divestment of her husband of them, as well as of those monies intrusted to him by others, would be at all equitable or just.

■ As regards these trust monies to be set aside to the Czecho-Slovakians, argument is directed to Executive Order No. 8389, 12 U.S.C.A. § 95 note, issued by the President of the United States under his emergency powers, and which deals with the freezing of property of alien nationals in possession of American citizens. The trial court in the final decree ordered these trust monies to be "set aside by the complainant to be turned over to the respondent (husband) subject to any authority or regulation imposed by Executive Order No. 8389 of the United States government, if any." We think a more proper disposition of these trust funds would be to have them deposited by Mrs. Roubicek with the Register of the court to be repaid to Mr. Roubicek upon his petition and due proof that such repayment will not contravene the various orders promulgated under the President's emergency powers, and the decree is ordered to be modified to this extent.

■ In view of the decision of the trial court to make an equal division of the subject assets, the adjudicated fee for the wife's solicitors should be paid out of the joint funds, and be borne equally by each. The costs of court, incident to the divorce proceeding, should be taxed against the appellant and the remaining court costs paid equally by the parties, and it is so ordered.

■ The final correction due to be ordered relates to the stipulation in the decree that Mrs. Roubicek shall continue as the owner and operator of her husband's business—though she be divorced from him—until his return from the service. Such an inconsistent status would be fraught with manifold complications, including the possible deterioration or loss of a business which is not rightfully hers, and the manifest inequitability of this phase of the decree prompts us to order its expungement on remandment, with directions that the right, title and possession of the business known as Associated Engineers be confirmed in appellant exclusively.

The remaining stipulations of the decree are affirmed with directions that the trial court reframe the final decree in conformity herewith.

Let the costs of appeal be paid, one-half by each party.

Affirmed in part, and in part reversed and remanded with directions.

GARDNER, C. J., and BROWN and LIVINGSTON, JJ., concur.

On Rehearing.

PER CURIAM.

The original opinion, we think, is subject to no ambiguous construction. It was deemed unnecessary to itemize the account to be stated between the parties. Only those items considered erroneously adjudicated by the court were treated.

But, that the formula be further simplified, the opinion is thus extended.

The stipulations of Sections 2, 3, 4, 8, 9, 10 and 11 of the decree have received the approval of this court and are affirmed.

■ The $1,318 in the personal account of the respondent was intended by the trial court to have been included in the figuration of an equal division of the so-called family assets and we think properly so. Hence in reframing the decree this item will be so treated and charged against him just as the net equity in the residence was charged against complainant.

The $4,700 is, of course, not the daughter's and in a proper proceeding between the two should be revested in appellee. In stating the account therefore we treat it as a part of the total estate (items 3 and 4, statement below).

Assuming, therefore, the list of total assets embodied in counsel's original brief for appellee to be correct (omitting the items designated in sections 2, 3, 4, 8, 9, 10 and 11 of the decree hereinabove mentioned and the $9,000 in bonds and $2,742 in money in Ruth's name, of which Roubicek raises no objection), the account for division should be thus stated:

| | | | |
|---|---|---|---|
| 1. Leta Roubicek | First Nat. Bank (Savings) | $ 5,000.00 |
| 2. Leta Roubicek | Bank for Savings & Trusts | 5,000.00 |
| 3. Ruth Roubicek | Bank for Savings & Trusts | 2,000.00 |
| 4. Ruth Roubicek | Steiner Bros. (Savings) | 2,700.00 |
| 5. Leta Roubicek | First Nat. Bank (Checking) | 2,000.00 |
| 6. Leta Roubicek | Birmingham Trust (Savings) | 1,000.00 |
| 7. Associated Engineers | First Nat. Bank | 1,770.00 |
| 8. Associated Engineers | Steiner Bros. | 2,000.00 |
| 9. J. Roubicek | Steiner Bros. (Savings) | 1,318.00 |
| 10. Net equity in residence | | 7,000.00 |

| | | |
|---|---|---|
| Total | | $29,788.00 |
| Trust funds of Czecho-Slovakian relatives to be deducted | $11,035.02 | |
| Total | | $18,752.98 |
| One-half to husband | | $ 9,376.49 |

To recapitulate, Mrs. Roubicek is due to reimburse Mr. Roubicek the last stated sum minus $1,318 (item 9, above), or $8,058.49.

 Appellee, through counsel, acerbitously complains that in determining the divisible assets, the net equity in the residential property should not have been considered because she owns it. This position ignores the most obvious, that this phase of the proceeding does not seek to determine the title to property, but to establish an equitable, gross award of alimony, and in so doing the relative financial standing of the parties is a matter to be considered. To adopt appellee's contention would achieve the manifestly inequitable result of a repayment to Roubicek of but a relatively small part of a considerable estate, of which he was practically the sole creator.

One matter called to attention on rehearing does impress us as containing merit and deserving of comment.

It is suggested that in awarding Mrs. Roubicek the income from her husband's business, pending his return from naval service, the court did so, in lieu of ordering the payment of monthly allotments by respondent as additional alimony. The trial court is better advantaged to determine such matters than this court and, if future exigencies should require a modification of the decree to this end, there would be no legal impediment in the way of such an order. Decrees relating to such matters are always subject to revision and modification (Sullivan v. Sullivan, 215 Ala. 627, 111 So. 911), and this opinion will not be regarded as restrictive of the right of the trial court, in the exercise of a sound discretion, to act in the premises.

Opinion extended and application overruled.