189 So.2d 854

John Blue **BOSWELL**

v.

Jane Kenan **BOSWELL (Stuart).**

3 Div. 129.

Supreme Court of Alabama.

Sept. 8, 1966.

Jack Crenshaw, Montgomery, for appellant.

**54**

Hill, Hill, Stovall & Carter, Montgomery, for appellee.

COLEMAN, Justice.

The father of a minor child appeals from a decree ordering the father to assign $11,899.68 of his share of certain trusts to the child's maternal grandfather " * * as full payment for the extraordinary medical expenses of the minor child * * * said extraordinary medical expenses having been paid by * * *" the grandfather. The grandfather has never been a party to the suit.

Father and mother were divorced from each other by decree dated July 17, 1952.

The decree awarded to the mother custody of the two minor children of the parties, granted visitation rights to the father, and ordered the father to pay to the mother

·' " * * * for the monthly maintenance and support of said two minor children, the sum of One Hundred Seventy-Five ($175) Dollars per month. The first payment shall be made as of July 1 for the month of July, 1952 * * *."

The mother, on October 25, 1963, filed a petition alleging that the father has not made the payments as ordered by the 1952 decree, that she has expended in excess of $11,899.68 for medical treatment for the older child, and is entitled to reimbursement. The petition contains the following prayer:

"2. That upon a final hearing of this cause, Your Honor will enter a decree:

"(a) Determining and fixing the exact amount of the accrued monthly payments; determining and fixing the exact amount to be allowed petitioner as reimbursement to her for money expended for necessary medical treatment for said John Blue Boswell, Jr. and reviving said judgment or decree of July 17, 1952, and that petitioner have judgment for the amount so determined and fixed by the Court.

"(b) Requiring the respondent to show cause, if any he has, why he should not be adjudged in contempt of this Court for failing to comply with the orders of this Court as to the payment of said support money.

"(c) Ordering the respondent to pay the costs of this proceeding, including a reasonable Solicitor's fee.

"(d) Petitioner prays for such other, further and different relief to which she may be entitled."

The father answered the petition, demanding

" * * * strict proof of the alleged amount of $11,899.68 to have been paid

by the petitioner for medical treatment of one of said minor children, John Blue Boswell, Jr., and in further answer respondent herein states that petitioner did not discuss or inform respondent of any of the alleged necessary treatments as set forth in paragraph 4 and that except for one occasion wherein petitioner's father contacted your respondent, your respondent had no prior knowledge of any medical costs and on no occasion were any plans for medical treatment discussed with respondent prior to such treatment; and further respondent states that since the original divorce decree on July 17, 1952 and through October 31, 1963, your respondent has caused to have paid over an amount in excess of $6,638.98 for doctor's bills, hospital bills and other necessary medical services for the said minor child, John Blue Boswell, Jr., all of which said money has been in excess of his ability to make such contributions for such purposes based upon his income during this period."

The father further answered that he has caused to be paid for support of the children an additional $13,871.75, and that the money he has paid, totaling $20,510.73, was all that he could pay.

The father answered further that during the greater part of the period since 1952, the mother and children have lived in the home of the mother's parents and the home of her second husband and that it would be an unjust benefit to the mother to require the father to pay the arrearage for support of the children.

The father prayed for reduction in the amount of the $175.00 monthly payment.

The court took testimony ore tenus on this pleading. The testimony shows the following circumstances.

The older child suffered congenital deformities and required almost constant attendance by a nurse or some other person. Over a period of years, the mother carried this child to other cities and he received extensive treatment and operations which were for the purpose of alleviating, and probably did alleviate to some degree, the affliction of this child. The $11,899.68 mentioned earlier represent the cost of treatment and operations. On the trial which resulted in the decree appealed from the parties stipulated that:

"* * * those payments were for necessary treatment on the child and that the charges were reasonable."

The trial court said:

"All right. Let the stipulation be entered that the $11,899.68 was for necessary and reasonable medical expenses of an extraordinary nature."

The younger child appears to have been normal.

After 1952, the mother remarried. She has since been divorced from her second husband.

The father has also remarried and has two additional children by the second wife with whom he now lives.

The father did not make all the payments of $175.00 per month as required by the 1952 decree. He had an interest in two trusts and he directed that the income from the trusts be paid to the mother. It seems that when the father arrived at each of the ages of 30 and 35 years, he received one-fourth of his share of the principal of one trust and will be entitled to a third one-fourth at age 40. As a result, the income from the trusts fell below $175.00 per month. As we understand the record, since the divorce decree, the mother has received from the trusts:

| For support of the two children | $13,871.75; |
|---|---|
| For medical expenses of afflicted child | $ 6,638.98. |

The statement from the trustee indicates to us that at age 40, the father will be entitled to an additional $4,400.00 from one trust, which will be the third one-

fourth of the principal. His interest in the other trust, from which he has received no principal, is approximately $12,500.00

The father's income from employment at time of trial amounts to about $100.00 per week, after deductions, plus year end bonus of $700.00 to $1,100.00. He has no other income. He showed that he has, presently, household expenses of $439.87 per month.

The mother testified that she had informed the father of the treatments and operations for the afflicted child, as follows:

"Q Now, where did you get the money to pay for these medical expenses you just testified about?

"A Well, I paid what I could with what I got, but after the bank notified me that they couldn't go into the principal and that they would have to give me the interest on the principal and that he was trying to make it up out of his pocket to make up the difference but I paid what I could and then I borrowed the rest from my daddy.

"Q He advanced it for you?

"A Yes, and I thought of paying him back when Johnnie would help me with it.

"Q You did expect to pay him back, did you not?

"A Yes, because he did say from time to time that he was going to do it and was going to help.

"Q Now, I believe you testified that he had several operations and was hospitalized several times in various hospitals over the country.

"A Yes.

"Q Did you discuss these with Johnnie from time to time?

"A Yes. Not every time we had to go up for a check-up or to change the cast, but if there was going to be an operation.

"Q Well, would you say that he was aware of this expense before it was incurred?

"A Oh, yes. He was aware of what was going on all along.

"Q And he has had an opportunity to pay it?

"A Yes. He was aware of it."

With respect to his knowledge of the treatment and the cost, the father testified:

"Q Now, Mr. Boswell, you heard Mr. Kenan and Mrs. Stuart testify as to the expenditure of over $11,000 besides what is not listed for medical expenses for John Boswell, Jr. through 1953 to 1963. Now, may I ask you if you will tell the Court if either one of them consulted with you about sending Johnnie to New York for any type of treatment or operation or medical consultation?

"A No, sir.

"Q Did either one of them consult with you prior to making trips to Nashville?

"A No, sir.

"Q Now, we could go into Baltimore, Warm Springs and Birmingham, and the rest, but let's take from this resume of expenses at least a minimum of fifteen trips that Mrs. Stuart and/or Mr. Kenan or Mr. Kenan made with little Johnnie for medical treatment. On how many of those trips would you state to the Court were you consulted with as to the pros and cons or advice of counsel prior to making them?

"A None.

"Q In other words, they did not consult with you prior to their going. They did not talk to you about the trips.

"A No, they did not.

"Q When was the first time you had any knowledge of these trips other than the Warm Springs trip in 1961? Did you have any knowledge of any such amount as $11,000 or $9,000 or any such large amount of expenditures that you would be expected to pay?

"A No, sir. The first time I was aware of it was approximately six to seven weeks ago when I went to Mr. Spann's office to discuss this matter with him. Mr. Spann at that time, I believe, showed me this figure.

"Q At any time prior to your visit to Mr. Spann's office did Mr. Kenan or Mrs. Stuart tell you that they expected you to pay any such amount as $9,000 or $11,000?

"A No, sir."

On cross-examination, the father testified that the grandfather, in 1961, had told the father that the cost of treatment at Warm Springs would be $3,000.00, and that:

"A * * * I did tell Mr. Kenan (the grandfather) that I was fully aware that the responsibility of those medical and hospital bills were mine and I told him that I had no money with which to pay them but that I would attempt to get money to help defray the expenses of this Warm Springs trip now that I had been informed of it, by the sale of this house in Perdido, which I attempted to do and which we attempted to do for over a period of a year. We attempted to sell this property to get money.

"Q Then, he did discuss with you this bill in 1961.

"A After—Mr. Spann, I would like to qualify this to that extent. Little Johnnie was already in the Warm

Springs hospital and the bills had already been incurred, and I was not consulted until after these expenditures were made or most of them had already been made.

"Q Well, you discussed it more than one time, didn't you?

"A Just that particular account. We discussed the selling of this house in Perdido in which I told Mr. Kenan that if I could sell that house that I thought I could get some money out of it and if I could get any money out of Perdido from the sale of the property, that I would be happy to reimburse him for whatever those expenditures were and that I had no other money available to me to defray those expenses with other than from the sale of this house." (Par. Added)

The grandfather on cross-examination testified that on his income tax returns, he took credit for the $11,899.68 as a medical expense, and that if he had not taken the credit, he would have had to pay income tax on the money that he spent for medical expenses.

After the hearing, the court rendered a decree which:

1. Reduced the support payments to $100.00 per month;

2. Required the father to pay an additional $25.00 per month to be applied on the $5,000.00 arrearage in support payments;

3. Fixed the due date for the payments;

4. Ordered:

"That the respondent shall forthwith make an irrevocable assignment of $11,899.68 to Robert L. Kenan, maternal grandfather of the minor child, John Blue Boswell, Jr., from respondent's distributive share of Trust L–583 and L–586 held by the First National Bank of Montgomery, as trustee of Trusts L–583

and L–586 created by F. P. Boswell, deceased, which shall be payable in 1965 upon the 40th birthday of respondent, as full payment for the extraordinary medical expenses of the minor child, John Blue Boswell, Jr., said extraordinary medical expenses having been paid by Robert L. Kenan, said irrevocable assignment to be made a part of the official record and to be considered as a request and direction on the part of the respondent on his 40th birthday to the trustee of said Trusts to forward the necessary funds up to an amount of $11,899.68 to Robert L. Kenan, and a lien is further hereby declared upon said trusts in favor of said Robert L. Kenan, and further the Court does hereby retain jurisdiction for the. enforcement of this provision.";

5. Fixed the wife's attorney's fees;

6. Taxed costs against the father.

The father appeals from the decree and assigns as error the making of the orders set out in paragraph 4 of the decree.

As best we understand the argument in brief, counsel for the father asserts that the award of $11,899.68 to the grandfather is erroneous because:

1. The award is not an award for a modification of the support award in the 1952 decree, and the mother has not applied for modification in eleven years.

2. The award is not an award to the mother for emergency medical expenses for the child; that there is no claim that the medical expenses were the result of an emergency; and that "They were known and foreseen at the time of the Decree of July 17, 1952."

3. That no man can make another his debtor by paying the debt of another without his request, unless the debtor avails himself of the payment by insisting on it as a satisfaction of the debt, or unless there is an express or implied agreement by the debtor to repay the debt, or an express or implied authorization by the debtor au-

thorizing the payor to make the payment; and, no such agreement or authorization by the father has been proved; and that, if the grandfather had brought an action for money paid, the father would have been entitled to a trial by jury.

4. That there is no allegation in the petition showing that the grandfather claimed or was entitled to any relief or was a party to the proceedings; that relief cannot be granted in equity without both allegations and proof; and that proof cannot supply omissions or defects in allegations.

In brief for the mother, counsel reply that:

The mother is entitled to reimbursement from the father for extraordinary medical expenses for the child and the court of equity "may order the father to make payments directly to the person providing monies for such expenses, so as to extinguish her debt to such person."

In support of this proposition, counsel for the mother cite four cases which we have examined.

In Cowen v. Cowen, 259 Ala. 37, 65 So.2d 196, this court, on appeal by the father from a decree of divorce, reversed an award requiring the father to pay to the mother $50 per month for support of their minor son. This court reversed the award because " * * * we do not think the evidence as it bears on his net income * * * is sufficient to justify such an award * * *." (259 Ala. at page 40, 65 So.2d at page 198) The court did say that there is on the father a continuous duty to support and maintain his minor child and the father's duty is not limited to income but he must support the child reasonably according to his means. We find no mention of modification of support provisions of a decree so as to require the father to reimburse the grandfather for medical expenses for the child incurred and paid over a period of eleven years be-

fore application for modification was made to the court.

In Roubicek v. Roubicek, 246 Ala. 442, 21 So.2d 244, this court did say, on rehearing, that decrees awarding monthly support payments to a divorced wife are always subject to revision and modification, but we find in the opinion nothing relating to an award for medical expenditures for a minor child.

In Armstrong v. Green, 260 Ala. 39, 68 So.2d 834, on appeal by the wife from decree rendered in a proceeding whereby she sought to place the husband in contempt for failure to pay for support of minor child as ordered by prior divorce decree, this court, on rehearing, did hold the husband in contempt for failure to make installment payments for support of the child, apparently for the reason that such payments, which had been ordered by a prior decree, became final judgments on the date the same became due and so were beyond the power of the court to modify or forgive. We have not found in the opinion any reference to payments for medical expense for the child.

In the summary of the holding in Armstrong v. Green, supra, it is stated that the "maternal" grandmother intervened, asking for custody of the child. Reading of the opinion and the original record indicates that it was the "paternal" grandmother who intervened.

We have considered that perhaps the *Armstrong* case was cited as authority for the proposition that, in a child support case, the court might grant relief to one not a party to the suit, but the case is not authority for that proposition because the decree recites:

"* * * Subsequently Mrs. S. P. Green was permitted to intervent and seek the custody of the child."

The person awarded custody was a party to the suit.

We find nothing in either of the three cases last cited which lends assistance in solving the problems in the instant case.

The remaining case cited by the wife does have to do with requiring the father to pay for necessary "orthodontic" treatment for the child. The dictionary indicates that this is dental treatment for irregularity of the teeth. Such irregularity is similar in a sense, perhaps, to the physical irregularity of the child in the instant case. In Rickman v. Rickman, 266 Ala. 371, 96 So.2d 674, this court affirmed a decree which modified a prior divorce decree by requiring the father

"* * * to pay the expenses of necessary orthodontic treatment for his minor child, Phyllis, such payments to be made directly to the orthodontist and not to exceed the sum of $1,000. * *" (266 Ala. at page 376, 96 So.2d at page 677.)

This court made short shrift of the father's insistence that requiring him to pay for the dental treatment was error. This court said:

"Appellant's only argument is, that the property settlement agreement of December 7, 1954 contained the provision that 'the wife should indemnify the husband for any additional claims for the child's maintenance.'

"Under the decisions cited above, this agreement became merged in the court's decree of February 26, 1955, and subject to modification by the court as the welfare of the child might require." (266 Ala. at page 378, 96 So.2d at page 679.)

There seem to be at least two differences between *Rickman* and the case at bar. There, prior to treatment of the child, application was made to the court for modification of the support provision of the divorce decree, but not in the instant case where application was made after the treatment.

In *Rickman,* on the appeal, the father, apparently, did not make objection to paying directly to the orthodontist. Here the father strenuously objects to paying one who is not a party to the suit.

*Rickman* appears to be authority that a court, which has granted a divorce, awarded custody, and ordered the father to make monthly payments for child support, may subsequently modify the decree to order the father to pay for dental treatment for the child, prior to the treatment. That, however, is not the instant case. Here the question is, does the court have authority to order the father to pay for extraordinary medical treatment some years after the treatment has been had and the expense incurred.

We emphasize that the treatment of the child in the case at bar was not emergency treatment. It was stipulated that the treatment was necessary, but there is nothing to indicate that immediate treatment was required so that the mother was excused from applying to the court for modification of the decree before incurring the expense of treatment. The record indicates that the treatment was had over a period of several years and that there was ample time to apply to the court for modification. This was not a case of a sudden injury as from a vehicle collision where immediate treatment was imperative, or a disease suddenly contracted where hospitalization and treatment could not be delayed without danger to the health or life of the child.

We have found little authority to aid us in deciding whether the court erred in ordering payment directly to the grandfather who was not a party.

In *Roubicek,* supra, this court did hold that the trial court erred in ordering a division between the parties of $4,700 which the mother had transferred from the joint account of father and mother to the account of the daughter. The reason for this holding is that " * * * The daughter is not a party to the suit and an adjudication in regard to these funds would be unauthorized * * *." (246 Ala. at page 449, 21 So.2d at page 251.) It is obvious that the court would be guilty of denying due process to the daughter if the court should take property of the daughter and give it to another in a proceeding where the daughter was not a party and was not given the elemental right to be heard.

In Hardin v. Hardin, 277 Ala. 318, 169 So.2d 762, in a suit for divorce, this court held that the trial court erred in ordering the wife to pay the balance due on a judgment which had been obtained against the husband in another proceeding. This court said: " * * * the court was without authority to direct payment to a judgment creditor which was not a party to the suit." (277 Ala. at page 322, 169 So.2d at page 766.)

In the case at bar, suppose the husband should pay the grandfather $11,899.68, would such payment preclude the grandfather from proceeding against the father in a separate suit on a claim for the amount paid or on a claim that the amount paid was not all that was due? It is axiomatic that a man's rights should not be controverted in a court of justice unless he has full opportunity to appear and vindicate them. It is somewhat difficult to understand how one who was not a party to the suit can be bound by the decree.

We are of opinion that, because the grandfather was not a party to this suit, the court erred in awarding the grandfather a decree against the father.

This suit was begun by and in the name of the mother. We have decided that the grandfather is not entitled to relief because he is not a party. We have not decided, however whether the mother is or is not entitled to a decree against the father for all or a part of the $11,899.68 which, according to the stipulation was expended for "necessary and reasonable medical expenses of an extraordinary nature." We

think the mother's right to relief should first be determined by the trial court in the light of all the circumstances and rules of law pertaining to the case.

The decree appealed from is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

LAWSON, GOODWYN, MERRILL and HARWOOD, JJ., concur.

LIVINGSTON, C. J., dissents.