910 So.2d 108 (2004)
Charles Jeffrey CHANDLER and Lou Ann Chandler
v.
STATE of Alabama.
2020233.
Court of Civil Appeals of Alabama.
March 12, 2004.
Rehearing Denied October 22, 2004.
Certiorari Denied April 8, 2005.
*109 John Kennemer, Tuscumbia, for appellants.
William M. Bouldin, spec. ass't atty. gen., Russellville, for appellee.
Alabama Supreme Court 1040215.
PER CURIAM.
Charles Jeffrey Chandler and his wife, Lou Ann Chandler, appeal from a judgment entered on a jury verdict, awarding $37,000 to the Chandlers as compensation for a portion of their property that had been condemned by the State in order to build the Patton Island Bridge.
The Chandlers are joint owners of land located adjacent to Florence Boulevard in Florence. In 1996 and 1997, the Chandlers constructed a two-story building with a basement on the property; the building consisted of 3,100 square feet of retail space and 880 square feet for the basement. After the start of the Patton Island Bridge project, the State condemned 2,047 square feet of the Chandlers' property, including most of the front parking lot for the building.
The State filed a complaint for condemnation in the Lauderdale Probate Court on January 31, 2001. The probate court appointed three commissioners to determine the amount of compensation that the Chandlers were entitled to as a result of the partial taking of their property. The commissioners concluded that the Chandlers should be awarded $38,608 in compensation for the partial taking of their land by the State. The probate court subsequently entered an order awarding that amount to the Chandlers on March 8, 2001.
The Chandlers appealed to the circuit court for a trial de novo. The case was tried before a jury on September 23, 2002. The jury returned a verdict stating: "We, the jury, find the fair market value of the property taken to be $37,000...." The trial court entered a judgment on the jury's verdict on October 2, 2002. The Chandlers filed a motion for new trial, which the trial court denied on October 28, 2002. The Chandlers appeal.
The Chandlers contend that the trial court erred in permitting Lloyd Clemmons, a real estate salesman and one of the commissioners who determined the amount of compensation to be awarded to the Chandlers for the probate court, to testify concerning the value of the property taken by the State. Clemmons testified that he valued the condemned property at $18,000. The Chandlers argue that Clemmons did not use the statutorily required method of valuing land in a partial-taking case and, therefore, that his testimony should have been excluded by the trial court. They further argue that the trial court's failure to exclude Clemmons's testimony is reversible error.
Section 18-1A-170(b), Ala.Code 1975, provides: "If there is a partial taking, the valuation rule is the difference between the fair market value of the entire property before the taking and the fair market value of the remainder after the taking." In City of Cullman v. Moyer, 594 So.2d 70 (Ala.1992), our Supreme Court explained that there are generally two methods of determining the value of property in eminent-domain cases and that the method codified in § 18-1A-170(b) is generally referred to as the "before and after" rule.
"`A different approach, something referred to as the "value plus damage" rule, appears to be followed in one of several variant formulations in a majority of states. Under this rule, briefly stated, compensation in partial taking cases generally consists of the *110 sum of the value of the property taken and of any net damages to the remainder after offsetting benefits. Text writers and commentators, however, are in substantial agreement that the "before and after" rule is preferable to the "value plus damage" approach, since it avoids confusing artificialities inherent in the latter approach, is more consistent with realistic market valuation and appraisal techniques, and reduces the risk of inequitable windfall recoveries by property owners that may unnecessarily increase the cost of public improvements.'
"Commentary to § 1002, Uniform Eminent Domain Code. (Citations omitted [in Moyer].)."
Moyer, 594 So.2d at 72. The Court in Moyer observed that our Legislature has explicitly adopted the "before and after" rule used in the Uniform Eminent Domain Code, and it concluded that "in setting forth one standard and omitting the mention of the other standard in Alabama's codification of the eminent domain laws of Alabama, [the Legislature] intended that only the mentioned standard be used to determine the value of a partial taking." Id. Based on § 18-1A-170(b) and Moyer, the Chandlers contend that it was error for the trial court to permit Clemmons to testify as to the value of the condemned property without taking into consideration the difference between the fair market value of the Chandlers' property before the taking and the fair market value of the remainder of their property after the taking.
At the trial, the jury heard testimony from three licensed appraisers. The Chandlers called appraiser Steve Wright, who placed the fair market value of the Chandlers' property before the taking at $230,000 and the value of the remainder of their property after the taking at $135,000; thus, based on Wright's valuations, the Chandlers' compensation for the partial taking would be $95,000. The State called two appraisers: Whit Beasley and Bobby Johnson. Beasley testified that he determined the value of the Chandlers' property before the taking to be $178,000 and the value of the remainder of their property after the taking to be $152,000; thus, based on Beasley's valuations, the Chandlers' compensation for the partial taking would be $26,000. Johnson performed his own evaluation, which, he testified, took into account the valuations of Wright and Beasley. Using what he referred to as the "cost approach," Johnson placed the value of the Chandlers' property before the taking at $224,000 and the value of the remainder of their property after the taking at $187,222, a difference of approximately $37,000.[1]
In addition to the testimony of the licensed appraisers, the jury heard testimony concerning the value of the property from Charles Chandler, who stated that he estimated the fair market value of his property before the taking to be $250,000 and the value of the remainder of his property after the taking to be between $60,000 and $70,000; thus, based on Charles Chandler's valuations, the Chandlers' compensation for the partial taking would be between $180,000 and $190,000, although Charles Chandler also testified that he had sustained damages of $160,000.
Finally, the State called Clemmons, one of the commissioners on the panel that had recommended an award to the probate *111 court. Clemmons testified that he placed the value of the condemned property at $18,000; he did not provide estimates of what he believed to be the fair market value of the Chandlers' land before and after the taking. However, Clemmons stressed that he is a real estate salesman, not an appraiser, and that he had performed what is known in the real estate business as a market analysis, not an appraisal. Clemmons explained that a market analysis is
"where we look at property that sold and property that's currently on the market, and come up with some [number].... a price that if someone comes up to me and wants me to market a piece of property, we'll go through that process, and I'll have an opinion of about what it should market for."
Clemmons stated that an appraisal, on the other hand, "is defined by the State of Alabama, [and] is what Mr. Beasley did...."
However, Clemmons admitted on cross-examination that his figure of $18,000 did not include any decrease in the value of the building on the property and that he "did not place a value on the building because he was not asked to do that." He also admitted that the $18,000 was a personal valuation, not that of the commission as a whole, which, he stated, had placed the value of the condemned property at $38,608.
It is apparent from Clemmons's testimony that he did not present a valuation of the Chandlers' property based on the "before and after" rule provided in § 18-1A-170(b), and Moyer makes it clear that only the "before and after" rule may be "used to determine the value of a partial taking." 594 So.2d at 72. Therefore, the trial court's admission of Clemmons's testimony over the Chandlers' objection was error.
At the close of the trial, however, the trial court instructed the jury regarding the valuation of the property as follows: "Now, in a case like this, where the State takes a portion of a property, the law of Alabama is that the landowner is entitled to the difference in value between his or their land before it was taken and the value of it after it was taken." Thus, the trial court's instruction tracks the statement of law codified in § 18-1A-170(b). In giving this instruction, therefore, the trial court arguably rendered harmless its earlier error in admitting Clemmons's testimony. See Jefferson County v. Flanagan, 722 So.2d 763, 766 (Ala.Civ.App.1998) (holding that an error in the admission of evidence of destruction of or injury to landowner's trees was harmless in light of trial court's subsequent instruction to the jury in a negligence and trespass action that the proper measure of damages was the "`difference in the value of the land before and after the trespass'" and that "`[t]he value of the timber [was] not the measure of damages'"); Carnival Cruise Lines, Inc. v. Snoddy, 457 So.2d 379 (Ala. 1984) (holding that error in permitting expert to testify as to impairment of earning power suffered by plaintiff was cured by subsequent jury charge that did not include impairment of earning power as an element of damages).
Further, a "`jury's verdict is presumed to be correct, and that presumption is strengthened by the trial court's denial of the motion for a new trial.'" Williams v. Williams, 786 So.2d 477, 480 (Ala.2000) (quoting Friendly Credit Union v. Campbell, 579 So.2d 1288, 1291 (Ala.1991)). Moreover,
"`[w]e will not reverse a judgment "unless ... the error complained of has probably injuriously affected substantial rights of the parties." Rule 45, [Ala.] *112 R.App. P.; Bianco v. Graham, 268 Ala. 385, 388, 106 So.2d 655, 657 (1958). The appellant bears the burden of proof on this issue. Roubicek v. Roubicek, 246 Ala. 442, 21 So.2d 244 (1945). This standard... requires more than an allegation of "some possibility that the jury could get some adverse thought...."'"
Mobile Infirmary Med. Ctr. v. Hodgen, 884 So.2d 801, 813 (Ala.2003) (quoting Atkins v. Lee, 603 So.2d 937, 946 (Ala.1992)) (emphasis added).
In the context of the trial court's correct instruction to the jury as to how it must measure damages in this case, we conclude that the Chandlers have not met their burden given: (1) Clemmons's qualifications of his own testimony, as described in detail above; (2) the fact that the jury awarded more in damages than the amount Clemmons testified the condemned property was worth; (3) the fact that the jury awarded more in damages than the lowest figure offered by one of the appraisers who used the "before and after" method of valuation; (4) the fact that the compensation award coincided exactly with the valuation arrived at by appraiser Johnson; and (5) the fact that Clemmons admitted on cross-examination that the commission as a whole had valued the condemned property at $38,608.
While the trial court erred in permitting Clemmons to give a valuation of the condemned property that did not rely on the "before and after" rule, "reversible error does not find its source in mere imperfection, for litigants are not entitled to a perfect trial, only a fair one." Chance v. Dallas County, 456 So.2d 295, 299 (Ala. 1984).
Based on the foregoing, we conclude that the trial court's admission of Clemmons's testimony amounted to harmless error and that, therefore, the judgment based on the jury's verdict is due to be affirmed.
AFFIRMED.
YATES, P.J., and THOMPSON and PITTMAN, JJ., concur.
CRAWLEY, J., dissents, with writing.
MURDOCK, J., dissents, without writing.
CRAWLEY, Judge, dissenting.
I respectfully dissent. The majority affirms the trial court's judgment entered on a jury verdict awarding $37,000 as compensation for the State of Alabama's taking of a portion of property belonging to Charles Jeffrey Chandler and Lou Ann Chandler. The majority concludes that the trial court's erroneous ruling that allowed inadmissible testimony concerning the value of the condemned property was harmless because the trial court subsequently gave the jury a curative instruction to disregard that inadmissible testimony.
The State presented two witnesses whose testimony was based on acceptable principles of appraising damages in a partial-taking case.[2] Then, the State presented Lloyd Clemmons, a real estate broker who identified himself and stated his real estate experience to the jury. During direct examination, Clemmons's testimony concerning *113 his evaluation of damages for the condemnation of the subject property was, in its entirety, as follows:
"Q. Did you have occasion at the request of the Probate Court to view the property of Mr. Chandler here and put a value on that property?
"A. Yes, sir. I did. It's been well over two years ago. And I have done a lot of things since that time. But I did do that.
"Q. What value?
"MR. KENNEMER [counsel for the Chandlers]: Your Honor, may we approach the bench at this time, please?
"THE COURT: Sure.
"(Bench conference)
"A. At the request of the Probate Court, did you place a value on the property that was being taken from Mr. Chandler for this highway project?
"MR. KENNEMER: Your Honor, at this time, I'd like to place an objection on the record, just that the testimony that's sought to be elicited from Mr. Clemmons is not the lawful test of damages in this case.
"THE COURT: Overruled.
"Q. You can answer.
"A. Yes, sir.
"Q. What value did you place on the property?
"A. Well, I, I'm going to have to be going on memory, because I really didn't know I was going to be here today. I didn't do any preparation for this. But I do, as I recall, it was, for the actual amount of footage of the property that was being taken, I come up with something like a little bit on the high side, I think, maybe for what it would have sold for if they'd been try trying to sell it. About $10 a square foot, as I recall.
"Q. All right, sir, and did you reduce that to a lump sum?
"A. Yeah. Somewhere around, you know, if I say it's going to be, it's going to be from my memory. And somewhere eighteen, seemed to me like, how many square feet, the only, I heard Mr. Beasley going over the size of that parcel awhile ago.
"And that is the last I have heard of that in about over two years. But I think it was, yeah, about $18,000, something like that, is what I remember.
"MR. BOULDIN [counsel for the State]: Okay. Thank you."
A condemning authority must scrupulously exercise its statutorily prescribed power of eminent domain when taking private property. Our supreme court has stated:
"The power of eminent domain exercised in the taking of private property for public use is a necessary power. The rights of the landowner are safeguarded by mandatory requirements that just compensation be first paid and due process of law provided in condemnation proceedings. The several statutes must be construed together to carry out the purposes in hand."
Jasper Land Co. v. Alabama Power Co., 213 Ala. 357, 358, 105 So. 264, 264 (1925) (emphasis added). It has further observed:
"It goes without saying that statutes conferring the power of eminent domain must be strictly construed in favor of the owner of the property sought to be condemned."
Agricola v. Harbert Constr. Corp., 294 Ala. 7, 10, 310 So.2d 472, 475 (1975). See also Blanton v. Fagerstrom, 249 Ala. 485, 487, *114 31 So.2d 330, 331 (1947) ("It is ... well understood that the grant of the power of eminent domain is one of the attributes of sovereignty and does not pass by implication, and that statutes conferring the right must be strictly construed." (Citations omitted.)). Lastly, our supreme court has noted:
"Any proceeding having for its object the taking of private property for public use must be in pursuance of clearly granted power and jurisdiction, comprehending, in spirit and intent, the subject matter set forth in the proceeding."
New & Old Decatur Belt & Terminal R.R. v. Karcher, 112 Ala. 676, 679-80, 21 So. 825, 826 (1896) (emphasis added).
It is my opinion that while the amount awarded by the jury in this case falls between the lower and upper amounts of compensation that was recommended in the admissible testimony presented at trial, that consideration alone fails to excuse the State's presentation of inadmissible testimony as to the value of the property taken. Because there was no relevant need for Clemmons's improper testimony, its introduction creates a conclusive presumption that the sole motive for its introduction was to prejudice the jury's valuation of the property taken. Stated differently, the issue is not the amount awarded by the jury in this case but whether the value of the property taken was fairly determined based upon admissible testimony. In State v. Cooper, 420 So.2d 771 (Ala.1982), a jury's award was between the highest and lowest values assigned to the condemned property by expert witnesses. In consideration of an argument that inadmissible testimony had wrongfully been admitted over a timely objection, as is argued in this case, Chief Justice Torbert, in writing for the majority, stated that "[i]t appears that the jury's assessment of damages at $37,000 was probably substantially influenced by the testimony concerning other condemned land." 420 So.2d at 772.
The majority in this case concludes that the trial court's curative instruction that the jury was to disregard the testimony given by Clemmons caused the error of admitting Clemmons's testimony to be harmless. In doing so, it relies upon Rule 45, Ala. R.App. P., and the following statement by our supreme court in Mobile Infirmary Medical Center v. Hodgen, 884 So.2d 801, 813 (Ala.2003):
"`We will not reverse a judgment "unless... the error complained of has probably injuriously affected substantial rights of the parties." Rule 45, [Ala.] R.App. P.; Bianco v. Graham, 268 Ala. 385, 388, 106 So.2d 655, 657 (1958). The appellant bears the burden of proof on this issue. Roubicek v. Roubicek, 246 Ala. 442, 21 So.2d 244 (1945). This standard... requires more than an allegation of "some possibility that the jury could get some adverse thought...."'"
(Quoting Atkins v. Lee, 603 So.2d 937, 946 (Ala.1992)) (emphasis added in majority opinion).
While our judicial system allows application of the harmless-error doctrine in noneminent-domain cases, such use should not blindly compel us to allow its application in this case. Our supreme court has observed:
"In reversing a judgment because of the admission of illegal evidence which the trial court had withdrawn and charged the jury to disregard, this court said:
"`This court has always regarded with caution the practice of admitting illegal evidence and afterwards excluding it....'"
Knabe v. State, 285 Ala. 321, 325, 231 So.2d 887, 890 (1970) (citation omitted). Further, *115 in Leahy v. State, 214 Ala. 107, 106 So. 599 (1925), a judgment entered on a jury verdict was reversed because of the erroneous admission of testimony regarding the value of other condemned parcels and the value of river frontage on a nearby creek. Similar to the testimony provided by Clemmons in this case, that evidence was clearly incompetent, shed no light on the value of the condemned property at issue, and was irrelevant.
The majority relies upon City of Cullman v. Moyer, 594 So.2d 70 (Ala.1992), for a statement of law pertaining to the "before and after" rule; however, the portion of Moyer relied upon by the majority also states:
"`Text writers and commentators, however, are in substantial agreement that the "before and after" rule is preferable to the "value plus damage" approach, since it avoids confusing artificialities inherent in the latter approach....'"
594 So.2d at 72 (emphasis added). The "value plus damage" approach is the method of valuation most like the method of valuation utilized by Clemmons in this case. Our supreme court has further stated:
"`Such evidence complicates the record, confuses the issue, is misleading, and especially in condemnation cases, raises collateral issues as to the conditions under which such sales were made....'"
State v. Cooper, 420 So.2d at 772 (quoting United States ex rel. Tennessee Valley Auth. v. Bailey, 115 F.2d 433, 434 (5th Cir.1940))(emphasis added).
I conclude that Clemmons's inadmissible testimony probably injuriously affected the Chandlers' substantial right to receive just compensation for the portion of their property that was taken by the State. See Mobile Infirmary Med. Ctr., supra. Accordingly, I would reverse the judgment of the trial court, and I respectfully dissent.
NOTES
[1] Johnson alternatively offered what he referred to as a "market approach," under which he set the value of the Chandlers' property before the taking at $182,000 and the value of the remainder of their property after the taking at $149,000, a difference of $33,000.
[2] The acceptable principle for assessing damages in a partial-taking case is referred to as the "before and after" rule, which provides that the proper amount of compensation to be awarded a party who has suffered a partial taking is the difference in the fair market value of the landowner's parcel of property before the taking and the value of the remainder of their property after the taking. See § 18-1A-170, Ala.Code 1975, and City of Cullman v. Moyer, 594 So.2d 70 (Ala.1992).