245 So.2d 819

**BIENVILLE MORTGAGE CORPORATION,**
a Corporation, et al.,

v.

Jack and Anna Joyce MAYO.

6 Div. 788.

Supreme Court of Alabama.

Jan. 7, 1971.

On Rehearing Feb. 25, 1971.

R. P. Denniston, Mobile, for appellants.

Bill Fite, Hamilton, for appellees.

MERRILL, Justice.

This is an appeal from a decree which determined that Bienville Mortgage Corporation (hereinafter referred to as Bienville), Mid South Homes Corporation (hereinafter referred to as Mid South) and The First National Bank of Mobile (hereinafter referred to as the Bank) had no right, title or interest in the land described in the bill, owned by appellees, Jack and Anna Mayo.

The bill, as amended, alleges that Mid South agreed to build the house for appellees, and a part of the consideration was that the house would be finished in April, 1968, and that time was the essence of the agreement; that Mid South did a little work on the house and then quit; that between January and April 1, 1968, appellees requested Mid South at least twenty times to finish the house, which requests were ignored; that on April 1, appellees wrote all the appellants reminding them of the agreement to complete by April 1 and re-

questing completion by May 8th; that the agreement had been breached by Mid South with the knowledge of the other appellants; that one or more of appellants claim to have a note, mortgage and building agreement executed by appellees which should in equity be canceled and declared null and void, and appellees offered to do equity. The prayer for relief asked for cancellation of the note, mortgage and other things, in writing, and for general relief.

The Bank, Bienville and Mid South all filed answers and cross bills; the Bank alleged the execution of the note for $12,500.00 with interest at six per cent, payable $75.00 per month, beginning April 1, 1968, alleged the negotiation of the note and mortgage to them for a valuable consideration on January 19, 1968, alleged default in payment of installments from April 1, 1968 through July 1, 1968, and its prayer for relief asked for a decree of foreclosure.

Mid South's cross bill alleged that Mid South entered into a written agreement with appellees on October 2, 1967 to build a Lyndale model house on land of the appellees for $12,500.00; that construction was to start within sixty days after report of notice of the loan closing; that the house was to be constructed in accordance with FHA plans and specifications and the house would be completed within one year of date from start of construction, and time was made the essence of the contract; that construction was started on the house as provided for in the agreement; that it was ready, willing and able to comply with the agreement and complete the house within one year; that appellees had interfered, molested and harassed Mid South in its efforts to carry out the agreement by refusing to allow it to come on appellees' property. Mid South's prayer for relief asked that appellees be ordered to comply with the written agreement and to cease and desist from interfering with their efforts to comply, and asked for general relief, offering to do equity.

After an oral hearing, the trial court, in addition to the holding that appellants had no interest in the lands, dismissed the cross bills and decreed that the Bank recover $1,250.00 from the Mayos.

Counsel for appellants did not participate in the trial and appears as attorney of record only on appeal.

We set out facts sufficient to show the type case, but concede that these are not all the facts.

The testimony showed that Bienville owned Mid South and Tide Water Homes corporations, that appellees' note and mortgage had not been assigned without recourse because the Bank had advanced only $8,750.00 on it, that the Bank had been paid by Bienville all it had advanced on the mortgage, and although the Bank still held the note and mortgage, Bienville had paid all advances the Bank had made on this transaction.

It is without dispute that the Mayos, in October, 1967, agreed to pay $12,500.00 for the Lyndale model home to be built on their lot by Mid South. On January 4, 1968, the salesman, Mid South's Tuscaloosa manager, Holmes, and Mid South's attorney, Walter Flowers, came to appellees' home to close the transaction. The note, mortgage and other papers were executed at that time, after the parties representing appellants assured the appellees that the house would be completed in ninety days from that date (April 4) and a written agreement was made to complete the work in one hundred twenty days (May 4). There is no dispute that time was repeatedly discussed and that time was of the essence.

Between January 4 and April 4, very little work was done on the house and on April 5, appellees' counsel wrote the three appellants that if the work was not completed before May 8, his clients would file suit to cancel the building loan agreement and the mortgage. Holmes, Mid South's manager in Tuscaloosa, testified that appellees called him several times between

January 4 and April 4, 1968 complaining about the house not being completed, but he would tell them he was having problems about material and labor.

On May 10, appellees filed suit. Finally, on June 5, workmen appeared to work on the house but were told not to come on the premises because suit had already been filed at that time. At that time, the house had been "blacked in", about one-third completed, with two rooms smaller than the plans called for, the concrete slab was "bursted all the way across the house" and all the way across the carport, some shingles had been blown off and some glass sliding doors did not keep out the rain. While the building was in progress, some prefabricated walls had arrived with the windows and doors facing in rather than out. They were put up but when it was found that they were for "reverse" plans, they were removed and the correct ones installed.

Counsel for appellants have argued several assignments of error but we do not deem it necessary in this case to discuss them separately. We are not impressed with the argument that appellant Mid South had one year in which to build the house, or that all the evidence should have been excluded except the testimony regarding the mortgage and note. The evidence shows clearly that the Bank was not a holder in due course. A reading of the record is convincing that Mid South or Bienville, or both, were not trying to carry out their part of the contract, and were content to let the construction drag after they had secured appellees' note and mortgage.

Where the evidence is heard orally by the trial court, whether in law or equity, its finding has the effect of a jury's verdict and will not be disturbed on appeal unless plainly erroneous. Mustell v. Rose, 282 Ala. 358, 211 So.2d 489; Norton v. Norton, 280 Ala. 307, 193 So.2d 750.

■■■ Some of the assignments of error were concerned with the reception of evidence in which appellants argue that the questions were either leading or the answers were not responsive. We have said that a decree in an equity case will not be reversed unless in the opinion of the court, after an examination of the entire cause, it should appear that the error complained of has probably affected a substantial right of the appellant. Roubicek v. Roubicek, 246 Ala. 442, 21 So.2d 244; State v. Mobile & O. R. Co., 228 Ala. 533, 154 So. 91, Supreme Court Rule 45. In our opinion, the rulings on evidence did not affect the legal result and no reversal should be predicated on such rulings.

Here, time was the essence of the contract. Appellants' representatives inserted "120 days" in the contract in which the house would be built. The undisputed testimony is that at this same meeting, appellees were promised that the house would be completed within 90 days. The undisputed evidence also is that Mrs. Mayo told these representatives (including Mr. Holmes) that she had heard other people say that their homes were not completed within the time promised and that Holmes said, "This one will be."

Mr. Holmes was called as many as twenty times between January 4 and April 9 about the slow work on the house. Demand was made on the three appellants to finish it before May 8, or suit would be filed. No offer to complete or effort to complete the job was made until after the suit was filed on May 10, 1968.

■■■ We have held that rescission cannot be supported until the party complaining of the delay or failure of performance calls upon the other party to perform, and a reasonable time is given therefor, after notice that the matter is desired to be closed according to the same contract. Bay Minette Land Co. v. Stapleton, 224 Ala. 175, 139 So. 342, and cases there cited.

We think appellees complied with these requirements and gave appellants longer than they had requested to do the work.

Here, appellees offered to do equity, and an offer to do equity confers jurisdiction on the court to attach such conditions to the decree as are necessary to make it equitable, and to grant affirmative relief to the defendants where otherwise the result to be worked out would be against equity and good conscience. Robbins v. Bell, 285 Ala. 124, 229 So.2d 511; Cobbs v. Norville, 227 Ala. 621, 151 So. 576.

The decree is so framed and no reversible error has been presented.

Affirmed.

LAWSON, HARWOOD, MADDOX and McCALL, JJ., concur.

## ON REHEARING

MERRILL, Justice.

Appellants call to our attention that there is no evidence in the record to support or explain the amount of $1,250.00 ordered by the trial court to be paid by appellees to the Bank. This particular amount was not explained in brief.

The only evidence as to the value of the building when appellees told appellants' workmen to leave on June 5, 1968, after suit had been filed, was from appellee, Jack Mayo. The court asked him, "What was its worth the day you told them to leave there and not to do any more work on it?" The answer was $3,500.00. The court further stated: "You said a while ago you thought it was one-third completed. In other words, you think it is worth $3,500.00 at ⅓ of its completion?" Answer: "Yes, sir."

A party who comes into chancery asking equity must do equity to the party against whom he complains. Where he owes a debt involved in the proceedings, he must pay, or offer to pay, or show some sufficient excuse for his failure to pay, otherwise his contentions cannot be sustained. Yonge v. Shepperd, 44 Ala. 315; Robbins v. Bell, 285 Ala. 124, 229 So.2d 511; Morgan v. Morgan, 275 Ala. 461, 156 So.2d 147.

When a mortgagor seeks to cancel a conveyance in a court of equity, he must do equity by restoring the consideration received by him. Owens v. Harris, 222 Ala. 461, 133 So. 6; Sumners v. Jordan, 220 Ala. 402, 125 So. 642, and cases there cited.

Since we do not understand how the trial court arrived at the amount of $1,250.00, and the evidence is that appellants did $3,500.00 worth of work, the judgment for $1,250.00 is reversed and the cause is remanded for the correct ascertainment of the worth of the uncompleted house at the time suit was filed. In all other particulars, the decree is affirmed.

Application for rehearing granted, affirmed in part, reversed in part and remanded with directions.

HEFLIN, C. J., and LAWSON, HARWOOD and MADDOX, JJ., concur.