319 So.2d 678

**ALABAMA FOOTBALL, INC., a corp.**

**v.**

**Ken M. STABLER.**

**SC 1131.**

Supreme Court of Alabama.

Sept. 25, 1975.

S. P. Keith, Jr., Birmingham, for appellant.

Beddow, Fullan & Vowell, and Frederick A. Erben, Birmingham, for appellee.

SHORES, Justice.

Stabler filed a complaint on December 4, 1974, seeking a declaratory judgment and other relief, contending that the defendant had breached its contract with Stabler by failing to pay the balance due in 1974 under the contract between the parties; that the terms of the contract prohibited him from negotiating a contract with any other professional football club; and that irreparable damage would result to him if the contract was not held to be null and void.

After a hearing, the trial court entered its judgment on January 6, 1975, holding that the contract between Stabler and Alabama Football, Inc. had been breached by Alabama Football, Inc. and that Stabler was free from any obligation under any of the terms of the contract.

This appeal is from that judgment.

Stabler is a professional football player. In April, 1974, he signed an agreement with Alabama Football, Inc., which was effective immediately, and which in part provided that Alabama Football, Inc. would pay him $50,000 upon signing and an additional $50,000 in the year 1974. The agreement provided that Stabler would play football for Alabama Football, Inc. for seven years after the expiration of his existing contract with the Oakland Raiders for a total consideration of $875,000, $100,000 of which was the bonus for signing and payable in 1974, $100,000 payable in 1975, and $135,000 per year thereafter through 1980.

The contract also prohibited Stabler from executing any other contract with any other football franchise or team in any football league.

The $50,000 was paid upon execution of the contract. The record indicates that at the time the contract was negotiated, some discussion was had regarding looking into the possibility of some deferred compensation plan, whereby Stabler might

avoid taxes on monies due in 1974. It was subsequently determined that no effective means could be worked out to avoid taxes on the monies to be received in 1974. When this was discovered, Stabler asked for the balance due him. He received $10,000 of the balance on May 20. In June, he was told that there was no money available to pay the balance; but on June 28, an agreement was entered into which set up a schedule of payments for the $40,000 remaining unpaid. $10,000 was paid under this arrangement, but the remaining payments were not made as they became due. $30,000 remained due at that time. On October 29, Alabama Football, Inc. delivered a note to Stabler for the $30,000 payable on November 29, 1974. When this note was not paid, Stabler filed this suit seeking cancellation of the contract, and also asked the court to issue a temporary restraining order prohibiting the use of his name by Alabama Football, Inc. This was granted and was finally made permanent.

■ Appellant argues, on appeal, that the trial court erred in refusing to dismiss the complaint on the ground that no justiciable controversy existed between the parties. We disagree. Stabler contended that he was entitled to rescind the contract between him and Alabama Football, Inc. on the ground that it had breached the contract between them; that it prohibited him from negotiating with any other professional football team; that repeated demands had been made on Alabama Football, Inc. for the payment of the amounts promised him in 1974; that Alabama Football, Inc. had used the fact of Stabler's signing with it to promote ticket sales and to recruit other professional football players; and that it was having financial problems which prevented its ability to live up to the contract between them. At the time of the hearing, the team had no money on deposit in a bank; the chairman of the board of Alabama Football, Inc. testified that the team was unable to pay the $30,000 due Stabler at the time of the hearing;

and it had been unable to pay either the September or October installments worked out by the June 28 agreement. The contention of Alabama Football, Inc. was that although it had not paid the $30,000 when due, it was trying to work out its financial problems, which the record indicates were formidable. Mr. Putnam, chairman of the board of Alabama Football, Inc., testified at the hearing in this cause that, at that time the team had indebtedness in excess of $1,600,000, and that it was overdrawn some $67,000 at the bank.

Under these circumstances, we cannot say that a justiciable controversy did not exist between the parties, which was subject to resolution by the trial court. *Teal v. Mixon,* 233 Ala. 23, 169 So. 477 (1936).

■■ Appellant argues that Stabler was not entitled to a judgment rescinding the contract, because he made no offer to restore the money which had already been paid to him under the contract. While the general rule supports this argument, *M. C. Dixon Lumber Co. v. Mathison,* 289 Ala. 229, 266 So.2d 841 (1972), it is not absolute. Stabler argues, and the trial court was of the opinion that, under the facts of this case, Stabler was under no obligation to restore the money paid to him. We agree. Obviously, contracts involving professional athletes are somewhat unique. The evidence indicates that Alabama, Inc. benefited from the fact that Stabler had signed a contract to play football with it beginning in 1976. It exploited his notoriety as a successful quarterback with the Oakland Raiders to sell tickets to ball games played in 1974; he appeared at press conferences to publicize Alabama Football, Inc. and the World Football League. While it is true that the general rule is " . . . a party may not disaffirm a voidable contract and at the same time enjoy the benefits received thereunder," *Betts v. Ward,* 196 Ala. 248, 251, 72 So. 110, 112 (1916), such rule must be applied to comport with general equitable principles. *Dermott Land & Lumber Co. v.*

*Walter A. Zelnicker Supply Co.,* 271 F. 918 (8th Cir. 1921).

The record is replete with indications that Alabama Football, Inc. was not able to fulfill its contract with Stabler. He was not paid the amount promised him in 1974, and the team was unable to pay him. Yet, under the contract, he was prohibited from negotiating a contract with any other team so long as he was under contract with Alabama Football, Inc. We agree with the trial court that the balancing of the equities would not require Stabler to return the money received during the year 1974, since there was evidence to support a conclusion that Alabama Football, Inc. had received benefits under the contract which Stabler was entitled to be paid for. We note also that the trial court, in holding the contract between the parties null and void, also cancelled the $30,000 note payable to Stabler, finding that balancing the equities between the parties could best be achieved in this manner.

■ It is next argued by appellant that notice of rescission is a condition to such action, and that it received no notice from Stabler of his intention to rescind. This court has held that " . . . where there is a contract involving mutual continuing duties on the part of both parties, and one party has breached, but has not repudiated, the contract, it is the duty of the other before rescission to give notice and opportunity to live up to the contract . . . " *Nelson Realty Co. v. Darling Shop of Birmingham, Inc.,* 267 Ala. 301, 310, 101 So.2d 78, 85 (1957). The purpose of such notice is to give the breaching party a chance to perform. This does not mean, however, that such notice is always a prerequisite to rescission. The conduct of the parties themselves may vitiate the necessity of this requirement. See *Fromm Sales Co. v. Troy Sunshade Co.,* 222 Md. 229, 159 A.2d 860 (1960). Indeed in the instant case, Stabler made repeated demands upon the appellant for the amount of the bonus due him. In fact, the appellant was given an opportunity to perform through the supplemental agreement and schedule of payments agreed upon on June 28, 1974. When it did not meet the payments agreed upon in that agreement, Stabler accepted a note due November 29, 1974. This note was not paid either. It is difficult to determine what more Stabler could have done to give appellant an opportunity to perform its part of the agreement. A formal notice of intention to rescind, under the facts of the instant case, was hardly necessary to give appellant an opportunity to perform; and the trial court correctly held that Stabler was relieved of this requirement before he could maintain his suit.

■ It is next submitted by appellant that the breach in the instant case was not substantial and that a slight or casual breach will not justify rescission. *Birmingham News Co. v. Fitzgerald,* 222 Ala. 386, 133 So. 31 (1931). While this is a good statement of the general rule, the appellant overlooks a universal rule more applicable to the facts of this case. The evidence adduced below relating to the financial condition of appellant is uncontradicted. It overwhelmingly supports a conclusion that it was unable to perform the contract with Stabler. While it is true that financial inability to perform " . . . whether due to . . . poverty, [or] financial panic . . . " 17 Am.Jur.2d, Contracts § 415, does not excuse nonperformance of a contract, it is equally true that:

"The inability of a party to perform a contract after it is made is, as a rule, a ground for rescinding it. The fact that substantial performance by one party is impossible or that a party is unable to perform a material part of the contract is a ground for rescission. . . ." 17 Am.Jur.2d, Contracts § 506.

Since there was substantial evidence from which the trial court could have concluded that appellant was unable to perform its contract with Stabler, we find no basis for reversal on this point.

It is finally argued that the trial court erred in allowing the deposition of Stabler into evidence. The basis of this contention is that Stabler's deposition was taken within thirty days after service of the summons and complaint. ARCP 30 provides that a plaintiff must wait thirty days after service to take a deposition unless leave of court is obtained. This deposition was taken within thirty days and, although the appellant filed an objection to the taking of the deposition, there is nothing in the record to indicate that the court ruled on the objection. There is, therefore, nothing for this court to review under the assignment of error on this issue.

Finding no error to reverse, the decree appealed from is, therefore, affirmed.

Affirmed.

HEFLIN, C. J., and MERRILL, MADDOX and JONES, JJ., concur.