This is a suit seeking rescission of an option contract for the purchase of certain improved realty, including 342 apartment units. *Page 1073 
On February 27, 1980, James T. Parsons, John B. Johnson, James A. King, Jr., and Hardie Meade, Jr. (purchasers) entered into an agreement with Jagermoore-Estes Properties and others (sellers) which provided in pertinent part as follows:
"OPTION AGREEMENT
 "In consideration of the sum of $100,000.00 the receipt of which is hereby acknowledged, we Jagermoore-Estes Properties, a partnership; Hale and Associates, a partnership; Glenn F. Till and Ellis H. Till, Jr. (hereinafter optionors); hereby give and grant to the undersigned optionees the option and privilege of purchasing for the full purchase price of $3,400,000.00, the real estate, 342 apartment units, described in Exhibit `A' attached hereto and made a part hereof. The individual parcels of real estate are owned by the individual optionors as described on Exhibit `A'. The optioned property includes all improvements, shrubbery, plantings, fixtures, appliances, and appurtenances, now existing or subsequently installed, in or upon the subject real estate.
 "The optionees have the right to exercise this option of purchase at any time within nine (9) months from the date hereof and the optionors agree to execute to the optionees a general warranty deed in form sufficient to pass full fee simple title to the property described herein, with the exception of easements and restrictions of record, and assuming the existing mortgages.
"* * * *
 "Optionors and their managing agent(s) shall use their best effort to keep all units rented during the term of this option, up to and including the date of closing.
 "Optionors warrant that customary repairs and maintenance shall continue on a sound, prudent, businesslike basis, and shall permit no waste to occur to the subject real estate during the term of this option, including extensions.
 "Optionors at optionors' expense, shall within sixty (60) days after closing place any units unrentable at time of closing in good rentable condition as determined by all parties, or if all parties cannot agree, the final decision will be determined by an Inspector from the Section 8 Division of the Housing Authority of the City of Birmingham.
 "Optionors warrant that they have not received any notification from any governmental agency of any pending public improvements, or requiring any repairs, replacements, or alterations to the property that have not been satisfactorily made or will be made at optionors' expense. Optionors are not aware of anything nor have they withheld any information that would have a material effect on the value. Optionors shall make these same warrants as of the date of closing.
 "Optionors shall make every effort to deliver the warranties, title, and documents specified herein, and to live up to each and every obligation in this agreement. If unable to do so, they shall promptly refund the $100,000.00 option fee and any extension fees."
On or about November 1, 1980, purchasers sent sellers the following letter.
 "Re: Option Agreement dated February 27, 1980
"Gentlemen:
 "In a recent inspection of the apartment complex which is the subject of the above captioned Option Agreement, it was noted to our dismay that the apartment complex is in a very poor state of repair. At the time the Option Agreement was entered into, you assured us that you would spend $100,000.00 for the repair, maintenance and renovation of the apartment complex. This has not been done.
 "Also, you represented to us that you would place ten (10) to twelve (12) additional apartment units into the Section 8 Program. This you have also failed to do.
 "You represented that after the repairs and necessary maintenance was performed *Page 1074 
and the new units placed into the Section 8 Program, it would enhance the value of the property by $1,000,000.00.
 "Since the repairs, maintenance and renovation have not been performed, as per the Option Agreement, and you have failed to place the additional units into the Section 8 Program, the apartment complex and the property on which same is situated has been reduced in value by a substantial amount.
 "You also agreed to use your best efforts during the option term to keep all apartment units rented. This you have also failed to do.
 "In view of your failure to comply with the terms and provisions of the Option Agreement and also in view of the many misrepresentations which you made to us at and prior to the time the Option Agreement was executed, we hereby advise you that we consider the Option Agreement null and void and in no force and effect.
 "We, therefore, request that you return to us the $100,000.00 which we heretofore deposited with you as option money."
On November 7, 1980, sellers responded:
"Gentlemen:
 "We received your letter in reference to option agreement dated February 27, 1980 and as you are aware we don't know what you are talking about.
 "We will be prepared to close on November 27, 1980 as agreed."
On November 25, 1980, purchasers brought suit in Jefferson County Circuit Court, seeking rescission of the contract and damages based on fraud and breach of contract. In particular, purchasers alleged that the agreement obligated sellers to use their "best efforts" to keep all units rented and repaired during the option term and that sellers had failed to do so, and had allowed the property to fall into further disrepair. Purchasers, subsequently, withdrew their claim for damages.
On September 12, 1983, the case was tried ore tenus in the circuit court, without a jury, and on October 13, 1983, judgment was rendered in favor of the sellers. That judgment provided in pertinent part:
 "The Court, having heard and considered all the evidence and observed the demeanor of each of the witnesses, finds that there was no such misrepresentation or fraud in the inducement; and the Court is further of the opinion that the relief sought by the plaintiffs is due to be denied.
 "The Court observed that all plaintiffs who testified are astute businessmen and well acquainted with real estate matters of this type. While the evidence is undisputed that there was a certain amount of deterioration of certain apartments in the complex which is the subject of this option due to vandalism, it is equally undisputed that there was deterioration of the same type at the time the option was executed and that the plaintiffs were aware of same before signing the option agreement. Additionally, it is undisputed that defendants spent a greater sum of money on maintenance of the apartment complex during the option period than they did during the same time frame immediately preceding the option period.
 "The central provision of the option as it relates to the basic complaints of the plaintiffs is that provision which provides that defendants would have sixty days after a closing of the sale pursuant to the option agreement in which to make the repairs necessary to put all the apartments in rentable condition. There was no evidence presented to the Court that the apartments could not have been put in rentable condition by defendants within the sixty-day period if they had been given the opportunity to do so.
 "While plaintiffs did offer evidence of alleged breaches by defendants, the Court specifically finds that no alleged breach on which evidence was offered would have been a substantial and fundamental breach so as to justify rescission of the option. Alabama Football, Inc. v. Stabler, 294 Ala. 551, 319 So.2d 678 (1975). The Court finds it significant *Page 1075 
that at no time during the option period was a complaint made or notice given by plaintiffs to defendants of any alleged failure of defendants to perform, thereby giving them a reasonable time in which to do so. Bienville Mortgage Corp. v. Mayo, 286 Ala. 675, 245 So.2d 819 (1971)."
Purchasers appeal here, asserting that the trial court erred in failing to grant rescission and order a return of their $100,000 deposit. We find no reversible error, and affirm.
Although we agree with the general propositions of law advanced by the purchasers, that a material falsehood constituting fraud may justify rescission, Stone v. Walker,201 Ala. 130, 77 So. 554 (1917), and that a material breach of contract may do likewise, Alabama Football, Inc. v. Stabler,294 Ala. 551, 319 So.2d 678 (1975), purchasers' brief does little else than reargue the facts as presented to the trial court. That court specifically found that there was neither a material breach nor the perpetration of a fraud.
It is well-settled that the question of whether fraud or a breach of contract has occurred is to be determined by the trier of fact, John Deere Industrial Equipment Co. v. Keller,431 So.2d 1155 (Ala. 1983), and that where, as here, the trial court sits as the trier of fact, its findings are entitled to a presumption of correctness and will be disturbed on appeal only if palpably wrong, unsupported by the evidence, or manifestly unjust. General Electric Credit Corp. v. Strickland Division ofRebel Lumber Co., 437 So.2d 1240 (Ala. 1983).
The record before us is lengthy, and, while we believe a detailed recitation of the evidence will neither serve the cause of justice nor aid in disposition of this case, we believe that there was sufficient evidence presented to support the findings and conclusions of the trial court. Briefly, the evidence shows that the purchasers are, indeed, businessmen who have experience in real estate speculation; two are realtors, one is a mortgage banker, and the other is a contractor. The evidence indicates that they agreed to purchase only after long negotiations; that they had an opportunity to inspect the apartments several times prior to executing the contract, and that they knew the apartments to be low rent units, in various states of disrepair, and subject to both vandalism and vacancy. They also understood that as much as $200,000 in capital would be needed to make repairs, and there is evidence, although disputed, indicating that they knew that their $100,000 deposit would not be used for this purpose. There is also evidence that the sellers spent a considerable sum on repairs and maintenance during the term of the option, and that they intended to make complete repairs after closing, using the $3,400,000 purchase price as capital. It is undisputed that by the terms of the agreement, they had sixty days after closing in which to accomplish this task.
While purchasers contend that a material part of the contract was that additional units were required to be improved so as to meet federal "section eight housing standards," we note that nowhere in the agreement is that intent expressed.[1]
Considering the foregoing evidence, along with the wording of the contract, we find that the decision of the trial court was supported by the evidence and was neither palpably wrong nor manifestly unjust.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and ADAMS, JJ., concur.
[1] While it is true that the purchasers' letter to the sellers also mentioned the section eight requirements, we believe that the terms of the agreement control and that the trial court could have found, as it apparently did, that the reference in the letter was no more than a self-serving statement, which it could, within its discretion, disregard. *Page 1076