Joe G. Cromeans and Mary Ann Cromeans commenced this action by filing a complaint against Evelyn McClure Caproon Osborne in the Circuit Court of Jackson County, seeking damages and an injunction to prevent Osborne from blocking a public road. A temporary restraining order was granted. This case was tried ore tenus in May 1985; the trial court found that the road was a public road and enjoined and restrained all parties from interfering with the public's use of the road. Osborne appealed.
 FACTS
The road in dispute is depicted in several of the exhibits in evidence; for reference, we will refer primarily to defendant's exhibit 9, which we attach as Appendix A.
So viewed, on the left side of the map, running northeasterly, is Scott Street. At the southwest corner is the intersection of Scott Street and County Park Road. (Note: Many of the deeds in evidence call that road by its older name, "City Park Road.") At the very bottom of the map, near the lower left corner, is the intersection of the road in controversy with County Park Road. Shown as being 20 feet in width, the road is represented by dotted lines as it traverses northeasterly, and it is almost parallel with Scott Street. As it goes in a northeasterly direction, the road passes on the left a vacant tract shown as parcel "36" on the map, and three dwellings, shown as "29.02," "29.01," and "29." It then reaches the property of Evelyn Osborne, the defendant, shown as parcel "30" and labeled "Osborne." Directly to the north is the property owned by Dr. Cromeans and labeled "Cromeans." The plaintiffs also own the greatest part of the property on the east side of the road, except for a tract shown at the bottom of the map, owned by Calvary Baptist Church.
Upon reaching the south line of the Osborne property, the road continues around *Page 33 
the eastern edge of the Osborne lot and into the Cromeans property, where it corners around the rental house owned by the plaintiff. At the corner, the road is at the crest of a ridge. From there, the road turns west and goes down the side of the Cromeans property along the ridge to the point where it intersects with Scott Street. The trial court held that the road from the rental house (near the corner in the road) down to County Park Road was a public road. No findings were made with respect to the remainder of the road, as it goes west from the same corner down the ridge to Scott Street.
Of primary importance are two houses owned by the parties to this appeal and designated on the reappraisal map (Appendix A) as triangles. The first house is the house owned by the plaintiff, which is in the corner of the disputed road at the top of the map, and on the parcel designated in handwriting as "Cromeans." The other house is on the parcel designated as "30" and labeled in handwriting as "Osborne." The house owned by Cromeans was built by Jim Broadway in 1953, and one of the witnesses, Albert Ricker, installed a gas heater when the house was built. At that time the house was serviced by only one driveway, which intersected with Scott Street (at the upper left side of the map) and went in a straight line up the ridge to the house. At the Scott Street intersection, Jim Broadway erected a "private road" sign. Until 1956, the only way to reach the Jim Broadway house was by that road; the portion of the road that extends from the house at the corner of the road down to County Park Road was not built until 1956. The Cromeanses own the property, and the road that runs through it and intersects with Scott Street. Unquestionably, the Cromeanses have access across their property to Scott Street, but there is a steep ridge at the point where the road intersects with Scott Street. In this action, the Cromeanses claim that they have the right to use the road that runs across Osborne's lot, and they claim that right because the road has gained a public character. Osborne argues that if the road that intersects with Scott Street is virtually impassable, then the Cromeanses could construct a road across their own property located to the north of the rental house, but the Cromeanses contend it would be too expensive for them to do so.
The Cromeanses argue that the road has acquired a "public" character because they have used it from the "early sixties" and specifically from 1963 until the time when the suit was filed to enjoin its obstruction by the defendant. There was evidence that after the Cromeanses bought their property in 1962, the road was used as a service road, and that the Cromeans family has used the road at least monthly, and that the Cromeanses have walked and ridden bicycles on the road across the Osborne property, without asking for Osborne's permission.
We have examined the record, and we find evidence from which the trial court could have found that the road in question had acquired a "public" character. The trial judge found that the road was built in 1956 on property owned at that time by I.E. Airheart and Gene D. Airheart. One witness testified that he considered the road a public road, and that he had used it numerous times to visit the Broadways, to mow the grass and spray the fruit trees in the area for Jim Broadway while he owned it, and for Joe Cromeans since that time. He testified that he did not get permission from anyone to use the road.
The deed from I.E. Airheart, et al., to Joe G. Cromeans and his wife, Mary Ann Cromeans (plaintiffs), shows on its face that "This conveyance is made subject to an easement or right-of-way for an existing road sixteen feet in width which runs in a general northeasterly direction along the west boundary of the above-described tract of land and the grantees, their heirs or assigns, shall have the full and free right to the use of said road."
The spot survey of Osborne's property made by J.T. Lusk dated December 31, 1957, certifies "that there are no rights of way, easements or joint driveways over or across said land visible on the surface." *Page 34 
The undisputed evidence shows that the City of Scottsboro regularly maintained the road for many years by use of a roadscraper and right-of-way mower. The undisputed testimony also was that the men, machinery, and materials of the City of Scottsboro were used to prepare the road for paving, and that the paving was paid for by the Cromeanses and other abutting owners, except Osborne, as is often the practice in Scottsboro in order to get gravel roads paved. A standard City of Scottsboro street sign is installed at the intersection of the road in question with the County Park Road, with the name shown thereon as "E RIDGE RD."
The evidence was uncontradicted that the U.S. Postal Service has run its mail route over this road for many years.
Likewise, the testimony is without dispute that the City of Scottsboro garbage pickup service has regularly operated along this road.
There was no dispute in the testimony that meter readers and other utility service personnel regularly used this road from the time it was built continuously down to the date of trial.
A gas supplier testified, without dispute, that he and his butane gas trucks could not get to the Jim Broadway house up the steep private drive from Scott Street, and, therefore, that he regularly used the subject road from the time it was constructed until the present time. He got no permission from anyone to use the road, because, he said, he "assumed that it was a public road."
In addition to this proof, the evidence is without dispute that sightseers, visitors to Broadway's house, the Cromeanses tenants, delivery people, joy riders, and the public generally used the road from the time it was built until the time of trial. Osborne's predecessor in title, Cleo Broadway, testified that the road from the Jim Broadway property southwest to the County Park Road had been used by anyone who wanted to use it continuously from the time it was constructed in the 1950's until the present time. He stated that his father had attempted to stop joy riders from making the loop from the County Park Road up East Ridge Road, formerly Broadway Drive, through his driveway and down his private drive to Scott Street by parking vehicles in the driveway on the Jim Broadway property, but that he never saw the driveway completely blocked, and, therefore, the joy riders continued to make the loop from the County Park Road to Scott Street, although they were slowed somewhat by the vehicles parked in the Jim Broadway driveway. His testimony was that the road in question extending from the Jim Broadway property line in a southwesterly direction to the County Park Road had never been blocked during all of the years that he had known it. The other witnesses who told about Jim Broadway's efforts to keep the joy riders from driving through his driveway each testified that the road in question had never been blocked anywhere between the south boundary of the Jim Broadway property (now the Cromeans property) and the County Park Road except for the brief period of time that Osborne blocked it with a load of dirt and installed a gate across the street in 1983.
The published map of the City of Scottsboro, prepared by Blevins Engineering Company, et al., in January 1960 purports to show all of the streets and highways in Scottsboro, Alabama, at the time of its publication, and it unmistakably shows the road that is the subject matter of this case as a public street named "Broadway Dr."
Subsequently, First National Bank published a map of the City of Scottsboro, Alabama, showing the streets and highways therein, and that map, which contained the 1965 Jackson County road map on the back side thereof, shows the subject road as "Broadway Drive."
Likewise, the TVA topographic maps introduced into evidence show the location of Broadway Drive.
It is also undisputed that the Jim Broadway driveway down the side of the ridge to Scott Street was steep, dangerous, and in disrepair, and could not be used by the gas truck.
The Cromeanses obtained this property by a deed from I.E. Airheart and Gene D. *Page 35 
Airheart. The deed states that "this conveyance is made subject to an easement or right-of-way for an existing road sixteen feet in width which runs in a general northeasterly direction along the west boundary of the above described tract of land and the grantees, their heirs or assigns, shall have the full and free right to the use of saidroad."
The issue on appeal is whether the trial court erred when it held that East Ridge Road was a public road. Osborne first contends that the Cromeanses failed to prove that they suffered special damages different in kind and degree from those suffered by the public in general and, therefore, that they were not entitled to bring this action to abate the obstruction.
This non-jury case was presented ore tenus. In anore tenus case, the trial court's findings of fact are entitled to a presumption of correctness unless it is demonstrated that they are plainly and palpably wrong, manifestly unjust, or unsupported by the evidence.Johnson v. Jagermoore-Estes Properties,456 So.2d 1072 (Ala. 1984); Seier v. Peek, 456 So.2d 1079
(Ala. 1984). We are of the opinion that the trial court's findings in this case are supported by the evidence.
This Court, in Ayers v. Stidham, 260 Ala. 390,71 So.2d 95 (1959), states the following regarding an individual's bringing an action to abate an obstruction:
 "When a road is shown to be a public road, a private individual is entitled to an injunction against encroachment or obstruction thereon when he has sustained special injury different, not merely in degree, but in kind, from that suffered by the public at large. Sandlin v. Blanchard, 250 Ala. 170, 33 So.2d 472
[1947]. The burden is on the complainant to allege and show such special injury. Walls v. C.D. Smith Co., 167 Ala. 138, 52 So. 320
[1910]; 39 C.J.S., Highways, § 127, page 1063."
260 Ala. at 392, 71 So.2d at 98.
The Court, in Ayers, also stated:
 "This court is committed to the rule that if the obstruction forces the owner of land abutting on the obstructed road out of his direct, public street or road into a circuitous route in his commerce and intercourse with the outside world, he has suffered such a special injury not suffered by the general inhabitants of the state, county, or city and may maintain an action to enjoin such obstruction. Purvis v. Busey, [260 Ala. at 373, 71 So.2d at 18
(1954)]."
260 Ala. at 393, 71 So.2d at 98.
We are of the opinion that the Cromeanses showed a special injury sufficient to bring this action. Osborne contends that the Cromeanses have access to the rental house by another road. The trial court, however, found that "This road was unusually steep, in a terrible state of repair, and is impassable by ordinary traffic in its present state of repair, and would be highly unsafe in the best state of repair." The trial court also found that the road could not be used by the propane gas trucks when carrying a full load. We believe that the evidence supports the trial court's finding regarding the use of the other road. The testimony at trial was that the disputed road was necessary for the propane gas trucks to deliver gas to the Cromeanses' rental home. The record also reveals that the other road was full of potholes, was on a steep hill, and that it was very dangerous.
Osborne next contends that the Cromeanses failed to prove that the disputed road had been used continuously for more than 20 years and that the use of the road was not permissive.
It is well settled law in this state that "an open, defined roadway in continuous use by the public, without let or hindrance for a period of 20 years becomes a public road by prescription." West v. West, 252 Ala. 296,40 So.2d 873 (1949). After a prescription has been shown, the burden is then on the landowner to show permissive use only in recognition of his title, and his right to reclaim possession. West v. West, supra.
After examining the record in this case, we are of the opinion that the trial court was authorized to find that the disputed road was an open, defined roadway, through reclaimed land, in continuous use by the public without let or hindrance for a *Page 36 
period of more than 20 years; therefore, the judgment of the trial court is due to be, and it hereby is, affirmed.
AFFIRMED.
ALMON, BEATTY, ADAMS and HOUSTON, JJ., concur. *Page 37 
 APPENDIX A
[EDITORS' NOTE: The map IS ELECTRONICALLY NON-TRANSFERRABLE.] *Page 38